## Kittanning Country Club's Liquor License Case.

## Kasnevich's Liquor License Case.

312

Argued January 11, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Harry C. Golden,* for appellant, in No. 77.

*Edward J. Steiner,* for appellant, in No. 79.

*Charles E. Harrington,* for appellee.

OPINION BY MR. JUSTICE BARNES, March 21, 1938:

On February 26, 1936, Leon Kasnevich, of North Buffalo Township, Armstrong County, applied to the Pennsylvania Liquor Control Board for a renewal of his restaurant license for the period ending April 30, 1937. On or about June 2, 1936, the Kittanning Country Club, also located in the same township, applied for a renewal of its liquor license for the same period. The Board refused both applications upon the ground that the township in which the applicants were located, at a liquor referendum election held November 5, 1935, had voted against the issuance of liquor licenses. In consequence it was prohibited by law from renewing the licenses of the applicants. Thereupon both Kasnevich and Kittanning Country Club appealed to the court below, contending that the question whether liquor licenses should be granted in the township had not been submitted to the electors in the manner required by law.[1]

The Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as reënacted and amended by the Act of July 18, 1935, P. L. 1246, establishes the Pennsylvania Liquor Control Board and the state stores system. It regulates the importation of alcoholic beverages, and the granting of licenses permitting the sale of alcoholic beverages for consumption upon the premises. The Act is state wide in its operation, but Article V (Sections 501 and 502) thereof authorizes Local Option elections, whereby the people of the various municipalities within the Commonwealth have the right to determine, in accordance with the procedure prescribed by

---

[1] These appeals are taken in accordance with the provisions of Section 404, of the Act of November 29, 1933, P. L. 15, as amended by the Act of July 18, 1935, P. L. 1246, which read in part: "Any person aggrieved by the refusal of the Board to issue a hotel, restaurant or club liquor license may appeal within twenty days from date of refusal to the court of quarter sessions of the county in which the hotel, restaurant or club is located."

the Act, whether liquor licenses shall be granted within the municipalities where they reside.

The question presented by these appeals concerns a liquor license referendum held under the power conferred by Sections 501 and 502 of the Act of 1935. Section 501 of the Act provides that in any municipality an election may be held, but not more often than once in four years, to determine the will of the electors with respect to the granting of liquor licenses by the Board to applicants within the limits of such municipality. Section 502 of the Act provides as follows: "Whenever electors equal to at least ten per centum of the highest vote cast for any office in the municipality or township at the last preceding general election shall petition the corporate authorities of the municipality or township for a referendum on the question of granting such liquor licenses, the respective corporate authorities shall cause a question to be submitted at the general or municipal election occurring at least sixty days thereafter, by certifying a resolution, duly adopted, to the county commissioners for submission of such question, on the ballot or on voting machines, at such election in the manner provided by the election laws of the Commonwealth.

"Such question shall be in the following form:

"Do you favor the granting of liquor      | Yes |
licenses for the sale of liquor in      of      | No |

"If a majority of the persons voting on such question vote 'Yes' then liquor licenses shall be granted by the Board to hotels, restaurants and clubs in such municipality or township for the sale of liquors under the provisions of this act, but if a majority of the persons voting on such question vote 'No,' then the Board shall thereafter have no power to grant or to renew, upon their expiration, any liquor licenses in such municipality or township, under the provisions of this act, unless and until the people therein shall, at a later time, have

again voted on the question and decided in the affirmative."

The Township of North Buffalo contains two election precincts or districts which are designated as "North Buffalo Township–Eastern" and "North Buffalo Township–Western." In the liquor referendum on November 5, 1935, the ballots used by the electors were in the following form; for the Western District:

"Do you favor the granting of liquor | Yes |
licenses for the sale of liquor in the
Township of North Buffalo—Western,
Armstrong County?" | No |

The ballots used in the Eastern District were identical in form, except the word "Eastern" appeared in place of the word "Western" upon the ballots. The voters in the Western District cast 67 votes for granting licenses and 111 against granting licenses, while in the Eastern District, the vote was 67 for and 62 against granting licenses. Accordingly, from the two voting districts, 134 voted in favor of the issuance of liquor licenses and 173 against the granting of such licenses. Thereafter, the vote was officially computed by the Court of Common Pleas of Armstrong County and, as certified, it was filed with the Prothonotary of the county and a copy of such certification forwarded to the Secretary of the Commonwealth. This certification did not consolidate the votes of the two districts into one return for North Buffalo Township, but scheduled the two districts separately, *as though each was a separate municipality.*

Thereafter the Prothonotary of the county by letter dated November 16, 1935, advised the Liquor Control Board as follows:

"I hereby certify the following to be the result of the local option vote in Armstrong County on November 5, 1935, on the two following questions:

"Do you favor the granting of liquor licenses for the sale of liquor in:

"Do you favor the granting of malt and brewed beverage retail licenses for consumption on premises where sold in:

|  | "LIQUOR | | MALT | |
|---|---|---|---|---|
|  | "Yes | No | Yes | No |
| "North Buffalo Twp. | 134 | 173 | 129 | 172 |

"(Boroughs and Townships not involved omitted.)

"Very truly yours,

"(SEAL)            R. H. McGRAW,

"*Prothonotary.*"

On the day fixed for hearing testimony upon the appeals of Kasnevich and Kittanning Country Club, various taxpayers and residents of North Buffalo Township, among them a certain W. M. Rhea, intervened in opposition to the application for licenses.[2]

The intervenors contend that the certification of November 16, 1935, from the Prothonotary of Armstrong County to the Liquor Control Board was conclusive concerning the results of such referendum, and that such election could not be declared invalid in a collateral proceeding. The court below decided that a valid referendum on the question of granting liquor licenses had not been held, because the ballot upon which the question was submitted to the electors improperly described the municipality in which the election was conducted. The court concluded that the ballots used in both townships should have followed the form prescribed by the Act of Assembly[3] and should have read: "Do you favor the granting of liquor licenses for the sale of liquor in the Township of North Buffalo, Armstrong County?" The court said: "the voters of each district of this town-

---

[2] The earlier history of this litigation is to be found in *Kittanning Country Club's Liquor Case,* 124 Pa. Superior Ct. 582.

[3] See Article V, Section 502, Act of July 18, 1935, P. L. 1246, 1269.

ship voted on the question as to whether or not liquor licenses were to be issued *in their district* but not as to whether they should be issued in the township as a whole.[4]

The Superior Court reversed the order of the court below and held that there "was sufficient evidence of the expression of the will of the electors" upon the question. It expressed the view that a liquor referendum election cannot be collaterally attacked in a proceeding such as the present one, otherwise the finality of all special referenda would be jeopardized. It decided that the applicants for licenses had failed to challenge the validity of the referendum by the proper procedure and with the proper evidence.

Two questions are presented by these appeals: first, whether the question was submitted to the electors of North Buffalo Township in the manner required by Sections 501 and 502 of the Act of 1935; and, secondly, whether the validity of a liquor license referendum may be collaterally attacked on an appeal to the Court of Quarter Sessions from a refusal of the Liquor Control Board to grant a license.

As to the first question, it was not necessary to introduce the testimony of witnesses to show that the voters were confused by the form of the ballot and that there was difficulty in comprehending the question submitted to them. The possible confusion is apparent from the face of the ballot itself. The legislature has specifically provided the form of the ballot; therefore, the question is one of law, for decision by the court, upon a comparison of the form of ballot actually used with the form of ballot prescribed by the Act of 1935.

It is manifest from the records of the referendum of November 5, 1935, that the question submitted to the

---

[4] See opinion of the court below in the *Kasnevich Appeal*, No. 46, June Sessions, 1936, filed April 17, 1937.

electors of the voting districts of the township did not conform to the provisions of the Act in question. The legislative intent to limit liquor license referenda to municipalities as defined in the Act is clear, and this legislative intention must be strictly complied with: *Rassau v. Campbell,* 236 Pa. 455; *Chilcott's License,* 61 Pa. Superior Ct. 552. It is well settled that the statutory forms prescribed for use in elections of this character must be rigidly adhered to and any variation therefrom will render the election invalid: *Barrett's Appeal,* 116 Pa. 486; *McLaughlin v. Summit Hill Borough,* 224 Pa. 425. In our opinion it is apparent that the question was not submitted to the voters in the form required by statute.[5]

The form of ballot used in the referendum of November 5, 1935, submitted the question to the electors of North Buffalo Township whether liquor licenses should be granted in two particular election districts of North Buffalo Township. The variation in this case, consequently, consisted in an inaccurate description of the municipality in which the question was submitted to the vote of the electors. This constitutes so material a deviation from the statutory form prescribed for use in elections of this character as to cause the ballot to be lacking in matters essential to the free expression of the will of the voters, thereby rendering the election a nullity.

While there is a presumption in favor of the validity of an election, and it is true that the original certification of returns is conclusive, these principles are entirely without application where the election is demonstrated upon its face to be void as a matter of law.

Secondly, the intervenor urges that the validity of the referendum cannot be collaterally attacked because Section 502 of the Act of 1935 provides that such referenda

---

[5] See also *Simons' License,* 25 D. & C. 231.

shall be held in a manner prescribed by the election laws of the Commonwealth, and in consequence the applicant's sole remedy is by an "election contest," as provided by the general election laws. In support of this position our attention is directed to Section 13 of the Act of January 30, 1874, P. L. 31, as amended; the Act of June 10, 1893, P. L. 419, and the Act of April 23, 1927, P. L. 360.

Relief in the manner provided by the general election laws is not the only method by which the validity of a referendum of this character may be challenged: *Barrett's Appeal,* supra; *McLaughlin v. Summit Hill Borough,* supra; *Bullitt v. Philadelphia,* 230 Pa. 544; *Stem v. Bethlehem Borough,* 231 Pa. 461; *Nyce v. Commissioners,* 319 Pa. 353. Here there is no question concerning the number of votes cast, or of a fraud or irregularity in the conduct of the election. In consequence the statutes upon which the intervenors rely are without application because this proceeding is not an election contest, within the meaning of that term as used in statutes.

In our opinion the question here presented is analogous to that arising under the Act of April 20, 1874, P. L. 65, and its various supplements and amendments, providing for special elections to authorize the increase of municipal indebtedness. In that Act, as in the Act now before us, no procedure is established for testing the validity of elections held pursuant to its provisions. It is clear that an election under the Act of 1874 which is invalid, because of the failure of the authorities to comply with the statutory requirements for the submission of the question to the electors, may be attacked collaterally by a taxpayer's bill. No direct remedy is there provided by the enabling statute. The same rule applies to proceedings of the type involved in the present appeals, and it would seem that a similar right exists in this case, particularly in view of the right of appeal conferred by Section 404 of the Act of 1935, P. L.

1261, and the failure of this Act to provide any procedure for challenging the result of the election.

It is manifest that the applicants in this case could not have obtained relief in equity against the enforcement of the referendum of November 5, 1935, because they would be unable to establish any interest in the results of the election distinct from that of any other member of the public, as the referendum did not provide for the cancellation of existing licenses but prohibited their renewal solely. Since renewal of the license was discretionary with the Liquor Control Board rather than a matter of right, the applicants at the time of the election were possessed of no property right requiring equitable protection or redress.

However, their present interest in the validity of the referendum is vital, and the refusal of the Board to renew their licenses for the single reason that they are prohibited from so doing by the result of the alleged election of November 5, 1935, clearly entitles the applicants to prove in the appeals authorized by Section 404 of the Act, that the election upon which the Board relies was not validly held. Here the point in issue is not the manner in which an election was conducted, or a collateral attack upon the result thereof, but whether an election was ever held upon the subject-matter of the controversy.

The election not being an expression of the will of the people, in the manner provided by statute, it follows that the refusal of the applications for licenses was not justified, and that the action of the learned Superior Court in reversing the order of the court below cannot be sustained.

The judgment of the Superior Court is reversed, and the order of the court below, directing the renewal of the licenses of the applicants is affirmed. Costs to be paid by appellee.