## Frederick H. Harper, Jr., Inc. Appeal.

Argued October 2, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*A. A. Purman,* for appellant.

*Lloyd E. Pollock,* with him *Andrew H. Uncapher,* for appellees.

OPINION BY KELLER, P. J., December 8, 1942:

This is an appeal by Frederick H. Harper, Jr., Inc., from the affirmance of the order of the Pennsylvania Liquor Control Board refusing to grant renewal of hotel liquor license to it and the dismissal of its appeal by the court below. A license held by appellant permitting the sale of liquors and malt and brewed beverages in the Fort Jackson Hotel in the Borough of Waynesburg, Greene County, was to expire April 30, 1942. Appellant's application for a renewal of its license was denied by the Pennsylvania Liquor Control Board on February 17, 1942, on the ground that local option referenda held September 9, 1941, had resulted

in a majority vote against the licensing of the sale of either liquor or malt or brewed beverages within the borough, and that consequently it was prohibited by law from renewing the license of the applicant. Appellant was permitted to waive a hearing before the board, and it appealed directly to the Court of Quarter Sessions of Greene County. It there attacked the legality of the referenda on numerous grounds.[1] Four individuals were allowed to intervene as respondents with the right to appear and defend. The court below, after hearing, affirmed the refusal of the renewal of the license, and dismissed the appeal.

It appears from the record that the holding of the referenda of September 9, 1941, was itself preceded by a controversy independent of the present issue. On July 9, 1941, the County Board of Elections of Greene County (the county commissioners constitute this board) issued public notice of the holding of a primary election for the nomination of candidates for state, county, township, and borough offices, and advertised the same in two newspapers, published in Waynesburg, in the issues of July 10 and July 17, 1941. This notice contained the following paragraph: "In case a petition for a referendum on the question of granting Liquor Licenses or in case a petition for a referendum on the question of granting malt and brewed beverage Retail Licenses, each properly prepared and signed, should be filed with the County Board of Elections at least Sixty Days prior to September 9, 1941, the question shall be submitted to the qualified electors at the fall Primary Election mentioned in this proclamation."

On July 9, 1941, petitions for referendum on both

---

[1] The validity of a local option referendum may be tested by an appeal from the refusal of a license in reliance upon the referendum. *Kittanning Country Club's Liquor License Case*, 330 Pa. 311, 320, 198 A. 91; *Greene Township Malt Beverage License Referendum Contest*, 331 Pa. 536, 1 A. 2d 670.

questions were filed. These petitions contained the signatures of 719 persons purporting to be qualified electors of the borough of Waynesburg. The registration commission, upon examination of these petitions, certified that, for various reasons, 104 of these persons were not qualified electors of the borough at the time of subscribing to the petitions. The county commissioners thereupon duly resolved not to submit the referenda on the ballot at the primary election on September 9, 1941, for the reason that the petitions lacked execution by electors equal to at least 25 per cent of the highest vote cast for any borough office at the last preceding general election. See section 502 of the Act of 1933, Sp. Sess., November 29, P. L. 15, Art. 5, as amended by section 1 of the Act of June 16, 1937, P. L. 1762, 47 PS §744-502; section 32 of the Act of May 3, 1933, P. L. 252, as amended by section 1 of the Act of June 16, 1937, P. L. 1827, 47 PS §100n.

On August 9, 1941, five citizens of the borough asked for a writ of mandamus from the Court of Common Pleas of Greene County upon the county commissioners to submit the referenda at the primary on September 9, 1941. An alternative writ was issued, and, after hearing, the court found that 47 signers of the petitions had been improperly disqualified in the registration commission's report to the county commissioners. On August 30, 1941, the court of common pleas orally, from the bench, ordered a peremptory writ to issue commanding the commissioners to submit the referenda at the primary election, and this order was reduced to writing and filed of record on September 2, 1941.

There was no official advertisement of the holding of the referenda other than the provisional paragraph contained in the notice of July 9, 1941. In the present controversy the intervenors, over appellant's objection, were permitted to offer evidence of an advertisement

inserted by unnamed individual business men of the borough in a newspaper of general circulation in the borough on September 8, 1941, calling attention to the holding of the referenda, and urging the voters to vote "yes" on the local option questions submitted. Similarly, evidence was admitted of general news publicity given the referenda in the September 9th issue of the same newspaper. The vote on the referendum as to the licensing of liquor sales was 843 in favor of and 1,220 against such licensing. The vote on the referendum as to the licensing of malt and brewed beverage sales was 813 for and 1,172 against. The court below held that the total votes cast were a reasonable number of the 2,884 electors registered in the borough, and that this circumstance, together with actual notice and general public knowledge of the holding of the referenda, operated to relieve the admitted deficiency of the notice required by the statute.

Appellant's fourth and fifth assignments of error challenged the admission of intervenors' evidence of newspaper advertisement and publicity upon which this conclusion of the court below is based.

Within the meaning of the Election Code of June 3, 1937, P. L. 1333, as amended, 25 PS §2600 et seq., a local option referendum is a special election. *Kram v. Kane et al.*, 336 Pa. 113, 8 A. 2d 398. The Code requires special elections to be held in accordance with its provisions relating to November elections, and section 637, art. 6, 25 PS §2787, reads as follows: "Every special election, held under the provisions of this article, shall be held and conducted in all respects in accordance with provisions of this act relating to November elections and the provisions of this act relating to November elections shall apply thereto in so far as applicable, and not inconsistent with any other provisions of this Act." A November election must be advertised in accordance with other provisions of the Code,

and section 1201, art. 12, 25 PS §3041, provides as follows: "The county board of each county shall, at least ten days before each November election, give notice of the same by newspaper publication in the county in accordance with the provisions of section 106 of this act, once a week for two successive weeks immediately prior thereto. Such notice shall set forth ...... (c) the text of all constitutional amendments and other questions to be submitted at such election; (d) the places at which the election is to be held in the various election districts of the county; and (e) the date of the election and the hours during which the polls will be open. Such notice may include a portion of the form of ballot or diagram of the face of the voting machine in reduced size."

Admittedly, compliance with these requirements of notice of the referenda here in question was not accomplished; compliance was impossible between the issue by the court of common pleas of its peremptory writ of mandamus and the holding of the election on September 9, 1941. Cf. *Watson v. Witkin et al.*, 343 Pa. 1, 22 A. 2d 17. The question presented to this court is whether this is a defect sufficient to nullify the referenda. We are obliged to conclude that it is.

In *Kittanning Country Club's Liquor License Case,* 330 Pa. 311, 198 A. 91, reversing the judgment of this court, 128 Pa. Superior Ct. 398, 194 A. 198, our Supreme Court held that a local option referendum in the township of North Buffalo, Armstrong County, was a nullity because the question printed upon the ballots referred to particular election districts within the township, and thus deviated from the form prescribed by section 502 of the Pennsylvania Liquor Control Act of 1933, Sp. Sess., November 29, P. L. 15, art. 5, 47 PS §744—502. In that case the Supreme Court, in an opinion by Mr. Justice BARNES, said (330 Pa. 311, at page 318, 198 A. 91, at page 94): "It is well settled

that the statutory forms prescribed for use in elections of this character must be rigidly adhered to and any variation therefrom will render the election invalid: *Barrett's Appeal,* 116 Pa. 486 [10 A. 36]; *McLaughlin v. Summit Hill Borough,* 224 Pa. 425 [73 A. 975]. In our opinion it is apparent that the question was not submitted to the voters in the form required by statute.

"The form of ballot used in the referendum of November 5, 1935, submitted the question to the electors of North Buffalo Township whether liquor licenses should be granted in two particular election districts of North Buffalo Township. The variation in this case, consequently, consisted in an inaccurate description of the municipality in which the question was submitted to the vote of the electors. This constitutes so material a deviation from the statutory form prescribed for use in elections of this character as to cause the ballot to be lacking in matters essential to the free expression of the will of the voters, thereby rendering the election a nullity."

It follows that adherence to the fundamentals prescribed by the statute was essential to the validity of the referenda on September 9, 1941, and consequently the lack of official newspaper advertisement by the county board of elections of the holding of the referenda at least ten days in advance thereof was not cured by any degree of actual notice or publicity or public controversy. The entire failure to give the statutory notice rendered the special election invalid. This interpretation we think is compelled by the pronouncements of our Supreme Court. Such notice was a fundamental preliminary, rather than an immaterial irregularity or an innocuous deviation from a statutory requirement which might have been previously rectified through resort to the remedy given by law for that purpose as in *Oncken et al. v. Ewing,* 336 Pa. 43, 8 A. 2d 402.

It is true that in *Com. ex rel. Gast v. Kelly,* 255 Pa. 475, 100 A. 272, it was held that an election will be sustained notwithstanding there was no proclamation, if the electors had general knowledge of it and a reasonable number of votes was polled. However, we cannot apply such a rule of expediency to a matter so strictly governed by statute as our Supreme Court has held a local option referendum to be. Neither is the proportion of votes cast to the total registration of qualified voters persuasive in the absence of controlling authority that such a special election not held de jure may be declared one held de facto. Every voter, even though it is possible that he may have been informed through other channels of publicity, is entitled to notice of the holding of such an election given as the law directs. As said by the Supreme Court in *Kittanning Country Club's Liquor License Case,* supra, 330 Pa. 311, at page 320, 198 A. 91, at page 95: "Here the point in issue is not the manner in which an election was conducted, or a collateral attack upon the result thereof, but whether an election was ever held upon the subject-matter of the controversy."

The fourth and fifth assignments of error are sustained. The remaining assignments of error thus become immaterial.

The judgment of the court below is reversed, and that court is ordered to direct the Pennsylvania Liquor Control Board to renew the license of the appellant upon compliance with all requirements. Costs to be paid by appellees.