## Kimmell's Appeal

*Harry C. James*, for appellant.

*Harry Ellsworth Simmons*, for Pennsylvania Liquor Control Board.

*John H. Jordan*, for intervenors.

WRIGHT, P. J., January 28, 1944.—The question involved is whether the county board of elections gave sufficient notice of a referendum in East St. Clair Township on the question of granting liquor licenses. Based upon the result of the referendum, the Liquor Control Board refused to renew appellant's liquor license, and this appeal followed. The validity of a local option referendum may be tested by an appeal from the refusal of a license in reliance upon the referendum: Kittanning Country Club's Liquor License Case, 330 Pa. 311; Greene Township Malt Beverage License Referendum Contest, 331 Pa. 536.

Within the meaning of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, as amended, a local

option referendum is a special election: Kram v. Kane et al., 336 Pa. 113. The Election Code provides (section 637) that a special election shall be held in accordance with its provisions relating to November elections. The pertinent provision (section 1201) reads:

"The county board of each county shall, at least ten days before each November election, give notice of the same by newspaper publication in the county in accordance with the provisions of section 106 of this act, once a week for two successive weeks immediately prior thereto. Such notice shall set forth . . . (c) the text of all constitutional amendments and other questions to be submitted at such election; (d) the places at which the election is to be held in the various election districts of the county. . . ."

On July 23rd and 30th, in the Bedford Inquirer and Bedford Gazette there appeared an "Announcement of Primary Election". This publication was in accordance with the provisions of section 106 of the Election Code. The notice set forth that a primary election was to be held "at the usual polling places" in the 42 voting districts of Bedford County on Tuesday, September 14, 1943, between the hours of 7 a.m. and 8 p.m. The final paragraph of the notice was as follows:

"The question of local option in the following boroughs and townships is also to be voted on at the coming primary, both as regards liquor and malt beverages in each instance: Bedford Borough, Bedford Township, East St. Clair Township, Everett Borough, Hyndman Borough, and Napier Township."

Appellant contends that the election was invalid because the notice, as published, varied from the form prescribed by the Election Code in the following particulars: (1) The notice was not published during the two successive weeks immediately prior to the election; (2) the notice does not set forth the text of the question to be submitted at such election; and (3) the notice does not set forth the place at which the election was to be held.

The case principally relied on is Harper's Appeal, 150 Pa. Superior Ct. 569. In that case there was a referendum in the Borough of Waynesburg at the primary election of September 9, 1941, which referendum resulted in a majority vote against the licensing of the sale of liquor. The only notice of the referendum was a provisional paragraph in the primary election notice which was published in two newspapers in the issues of July 10 and July 17, 1941. This provisional paragraph, in actual fact, was no notice at all. President Judge Keller said (p. 575) :

"It follows that adherence to the fundamentals prescribed by the statute was essential to the validity of the referenda on September 9, 1941, and consequently the lack of official newspaper advertisement by the county board of elections of the holding of the referenda *at least ten days in advance thereof* was not cured by any degree of actual notice or publicity or public controversy. The *entire failure* to give the statutory notice rendered the special election invalid." (Italics supplied.)

It is clear that Harper's Appeal is authority for the proposition that there must be notice of local option referenda and that such notice is a fundamental preliminary. However, our analysis of the reasoning of the Superior Court leads us to conclude that the case is not necessarily authority for the proposition that the notice (as opposed to the ballot) must be in the exact statutory language. In Harper's Appeal, there was an entire failure to give notice. In the present case, a notice was published. Admittedly it varies from the statutory requirement, both as to form and as to time of publication. The question for determination is whether these variations are fatal.

In Kittanning Country Club's Liquor License Case, 330 Pa. 311, cited by the Superior Court in Harper's Appeal, Mr. Justice Barnes said (p. 318) :

"It is well settled that the statutory forms prescribed for use in elections of this character must be rigidly adhered to and any variation therefrom will render the election invalid: Barrett's Appeal, 116 Pa. 486; McLaughlin v. Summit Hill Borough, 224 Pa. 425."

We believe that when Mr. Justice Barnes used the words "statutory form" he was referring to the form of the ballot and not to the form of the notice. The Kittanning Country Club Case did not deal with defective notice. The attack there was on the form of the ballot. The two cases cited in the quoted language both concerned defective ballots. In the present case, the form of the ballot was admittedly regular.

We have been much impressed by the language of Mr. Justice Stern in Oncken et al. v. Ewing, 336 Pa. 43, 47:

"The invalidation of a public election is a judicial act of serious import, and is justified only by circumstances of the most compelling nature. Of course, there may be cases where there has been deliberate fraud on the part of election officials; or where a statute expressly provides that certain mistakes or defects in the ballots shall invalidate the election; or where some fundamental preliminary of the election has been ignored, as in Nyce v. Board of Commissioners, 319 Pa. 353; or where, as in Kittanning Country Club's Liquor License Case, 330 Pa. 311, the form of the ballot is so lacking in conformity with the law and so confusing that the voters cannot intelligently express their intentions; in such instances it may be proper and necessary for a court to nullify an election. But where the irregularity complained of could not reasonably have misled the voters and did not result in the question at issue being presented to them unintelligibly, the election cannot be judicially overturned because of some innocuous deviation from a statutory requirement which might have been previously rectified through resort to the

remedy given by the law for that purpose. As was said in Bowers v. Smith, 111 Mo. 45, 20 S. W. 101, quoted in Black on Interpretation of Laws, p. 571, and from the latter in Knight v. Coudersport Borough, supra, and again in Commonwealth ex rel. Gast v. Kelly, 255 Pa. 475, 481, in Fish's Election, 273 Pa. 410, 415, 416, and in Luzerne County Election Returns, 301 Pa. 247, 256, 257: 'If the law itself declares a specified irregularity to be fatal, the courts will 'follow that command, irrespective of their views of the importance of the requirement. In the absence of such declaration, the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed forms of law had, or had not, so vital an influence on the proceedings as probably prevented a free and full expression of the popular will. If it had, the irregularity is held to vitiate the entire return; otherwise, it is considered immaterial . . . It does not . . . follow that every slight departure [from the provisions of the election laws] should taint the whole proceedings with a fatal blemish. Courts justly consider the chief purpose of such laws, namely, the obtaining of a fair election and an honest return, as paramount in importance to the minor requirements which prescribe the formal steps to reach that end; and, in order not to defeat the main design, are frequently led to ignore such innocent irregularities of election officers as are free of fraud and have not interfered with a full and fair expression of the voters' choice.' "

In support of our previous analysis, we point out that Mr. Justice Stern does not cite the Kittaning Country Club case to illustrate a situation where a fundamental preliminary has been ignored but rather to illustrate a situation where the form of the ballot is defective. The case cited to illustrate the former situation is Nyce v. Board of Commissioners, which is readily distinguishable. In that case a special election

for increase of indebtedness in a township of the first class was held on May 15, 1934, by virtue of an ordinance which did not become valid until April 17, 1934. The advertisement of the election was by handbills posted on April 11, 1934. The Supreme Court held that the 30 days' notice required by the Act of 1874 was not given and that newspaper publication was required by the Act of 1931. In the present case we have newspaper publication at least 10 days in advance. Appellant does not complain that the notice was not published soon enough, rather that the notice was published too soon. The attack is not upon the manner of publication but upon the form thereof.

Endeavoring to apply the reasoning outlined in Oncken et al. v. Ewing, supra, we have concluded that no fundamental preliminary of the election was ignored. There was no fraud. The ballot was not defective. The law itself does not declare the irregularities complained of to be fatal. Nor do we feel that these irregularities had so vital an influence on the proceedings as probably prevented a free and full expression of the popular will. In our conscientious opinion, all three of appellant's complaints relate to "innocuous deviations."

1. While the notice did not appear during the two successive weeks immediately prior to the election, it did appear once a week for two successive weeks at least 10 days before the election. It was published in accordance with section 106 and accompanied the publication of notice of the primary election which was held at the same time. In construing a statute, a different attitude must be taken than when procedural requirements of the Constitution are under consideration, and substantial compliance as to the time in which an act may be done is frequently held sufficient so long as the purpose of the act is effectuated: Tausig v. Lawrence, Secretary of Commonwealth, 328 Pa. 408, 412. We do not feel that the time of publication was so fun-

damentally of the essence of the thing to be done that the election should be invalidated because the notice appeared a not unreasonable number of weeks too soon.

2. While the text of the question was not set forth, the notice does state that "the question of local option is also to be voted on at the coming primary both as regards liquor and malt beverages". Sections 501 and 502 of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as reënacted and amended by the Act of July 18, 1935, P. L. 1246, authorize "local option" elections. "Local option" is a term with which our citizens have been familiar for many years. The purpose of the publication was to give notice of the coming referendum, and we feel that it was sufficient for that purpose. There were 506 persons eligible to vote, and 360 votes were actually cast. This was a much higher proportion than in other districts not voting on local option and is ample proof of the sufficiency of the notice. The failure to print the text of the question was not a fundamental irregularity in view of the actual content of the notice, and in view of the fact that the text of the question was printed regularly on the ballot.

3. The notice sets forth that the election will be held "at the usual polling places". It might well be argued that this was a strict compliance with the statutory requirement. Even if not so considered, there could be no uncertainty when the polling place in East St. Clair Township has been in the same place for over 50 years, and the referendum was held in conjunction with the regular primary election.

We feel that our conclusion is supported by the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 58, which provides that, with certain exceptions which do not apply to the present situation, laws shall be liberally construed to effect their objects and to promote justice. This is not a wet and dry question so

far as the court is concerned. It is our view of the law that judicial review should not be so extended as to invalidate an election under the circumstances of this case.

### Decree

Now, to wit, January 28, 1944, the appeal is dismissed at the cost of appellant; an exception is noted.

NOTE.—An appeal from the foregoing decree was dismissed by the Superior Court on March 5, 1945, without consideration of the merits, on the ground that the decision of the lower court was final.