## Pontera et ux. v. Simons et al.

*Martin E. Cusick* and *John W. McWilliams,* for plaintiffs.

*Leo H. McKay,* county solicitor, for defendants.

ROWLEY, P. J., October 24, 1947.—This matter is before the court upon a bill in equity for an injunction

to restrain defendants from certifying to the Pennsylvania Liquor Control Board the results of a special election held September 9, 1947, to determine the will of the electors of the Borough of Mercer with respect to the granting by the Liquor Control Board of liquor licenses and licenses for the sale of malt and brewed beverages within the Borough of Mercer.

The bill also prays that defendants be required to:

"(b) Show cause why the special election should not be decreed illegal, null, void and of no effect.

"(c) Show cause why defendants should not produce in court the unused official ballots upon which said separate questions were submitted to the voters in the east, north and south precincts of the Borough of Mercer at the special election held September 9, 1947.

"(d) To show cause why the ballot boxes for the east, north and south precincts of the Borough of Mercer used at the special election held September 9, 1947, should not be produced in court and the same opened and the entire vote of all three precincts on said separate questions correctly counted.

"(e) Show cause why general relief should not be granted to plaintiffs."

Plaintiffs' bill avers:

"1. They are residents, taxpayers and duly qualified electors of the Borough of Mercer, Mercer County, Pa., residing on Wilson Avenue in the Borough of Mercer, Mercer County, Pa.

"2. On September 9, 1947, they were duly qualified electors of the Borough of Mercer, Mercer County, Pa., and voted in the primary and special election on said date in the Borough of Mercer, Mercer County, Pa.

"3. Said plaintiffs are the holders of a retail liquor license issued to them by the Pennsylvania Liquor Control Board for the term beginning August 1, 1947, and terminating July 31, 1948.

"4. At a special election held in the Borough of Mercer on September 9, 1947, said defendants, comprising the Board of Elections of Mercer County, submitted to the electors of the Borough of Mercer the following questions:

"(a) *Do you favor the granting of liquor licenses for the sale of liquor?*

"(b) *Do you favor the granting of malt and brewed beverage retail dispenser licenses for consumption on the premises where sold?*

"5. (a) The Pennsylvania Liquor Control Act of November 29, 1933, Spec. Sess. P. L. 15, sec. 502, as amended, 47 PS §744-502, provides that such question as to liquor shall be submitted in the following form:

"*Do you favor the granting of liquor licenses*   Yes
*for the sale of liquor in* . . . . . . . . *of* . . . . . . . .?   No

"(b) The Beverage License Law of May 3, 1933, P. L. 252, sec. 32, as amended, 47 PS §100n, provides that such question as to malt and brewed beverages shall be submitted in the following form:

*Do you favor the granting of malt and brewed*   Yes
*beverage retail dispenser licenses for consump-*
*tion on premises where sold in the* . . . . . . . . *of*   No

.  .  .  .  .  .  .  .

"6. Defendants, comprising the Board of Elections of Mercer County, at the special election held September 9, 1947, in said Borough of Mercer, submitted separate questions for each precinct in the said Borough of Mercer in the following forms:

"(a) For the east precinct the questions were as follows:

"Question 1: Do you favor the granting of   Yes
Liquor Licenses for the sale of liquor in the East
District, Borough of Mercer?   No

"Question 2: Do you favor the granting of   Yes
Malt and Brewed Beverage Retail Dispenser Licenses for consumption on the premises where
sold in the East District, Borough of Mercer?   No

"(b) For the north precinct the questions were as follows:

"Question 1: Do you favor the granting of Liquor Licenses for the sale of liquor in the North District, Borough of Mercer?     Yes     No

"Question 2: Do you favor the granting of Malt and Brewed Beverage Retail Dispenser Licenses for consumption on the premises where sold in the North District, Borough of Mercer?     Yes     No

"(c) For the south precinct the questions were as follows:

"Question 1: Do you favor the granting of Liquor Licenses for the sale of liquor in the South District, Borough of Mercer?     Yes     No

"Question 2: Do you favor the granting of Malt and Brewed Beverage Retail Dispenser Licenses for consumption on the premises where sold in the South District, Borough of Mercer?     Yes     No

"7. The unofficial returns of said special election were as follows:

"(a) On the question, *Do you favor the granting of liquor licenses for the sale of liquor?*

|                | Yes | No  |
|----------------|-----|-----|
| East Precinct  | 137 | 93  |
| North Precinct | 120 | 200 |
| South Precinct | 133 | 178 |
| Total          | 390 | 471 |

"(b) On the question, *Do you favor the granting of malt and brewed beverage retail dispenser licenses for consumption on the premises where sold?*

|                | Yes | No  |
|----------------|-----|-----|
| East Precinct  | 144 | 78  |
| North Precinct | 134 | 173 |
| South Precinct | 146 | 159 |
| Total          | 424 | 410 |

"From the unofficial returns it, therefore, appears that on the question, *Do you favor the granting of liquor licenses for the sale of liquor?* the total vote was 'yes', 390, and 'no', 471. On the question, *Do you favor the granting of malt and brewed beverage retail dispenser licenses for consumption on the premises where sold?* the unofficial return was 'yes', 424, and 'no', 410.

"8. The official returns of said special election have been compiled as follows:

"(a) On the question, *Do you favor the granting of liquor licenses for the sale of liquor?*

|  | Yes | No |
|---|---|---|
| East Precinct | 137 | 93 |
| North Precinct | 134 | 173 |
| South Precinct | 146 | 159 |
| Total | 417 | 425 |

"(b) On the question, *Do you favor the granting of malt and brewed beverage retail dispenser licenses for consumption on the premises where sold?*

|  | Yes | No |
|---|---|---|
| East Precinct | 144 | 78 |
| North Precinct | 120 | 200 |
| South Precinct | 134 | 178 |
| Total | 398 | 456 |

"It appears that on the question, *Do you favor the granting of liquor licenses for the sale of liquor?* 417 votes were 'yes' and 425 votes were 'no', and on the question, *Do you favor the granting of malt and brewed beverage retail dispenser licenses for consumption on the premises where sold,* 398 votes were 'yes' and 456 votes were 'no'. It, therefore, appears that there was error in the computation of the vote in both the north and south precincts of the Borough of Mercer.

"9. Your petitioners are reliably informed that there were nine ballots returned as spoiled from the

east precinct of the Borough of Mercer, upon at least one of which the voter indicated his intention by writing the words 'yes' after each question. On several other ballots, there were check marks after the words 'yes' and, at least one ballot was marked with ink instead of pencil. There is no provision in either the Retail Beverage License Act or in the Pennsylvania Liquor Control Act stating how the ballot shall be marked or whether it shall be marked with ink, pencil or indelible pencil.

"10. The form of the questions submitted by defendants, comprising the county board of elections, was separate questions for each precinct and not in conformance with the provisions of the act of assembly, which provide for the submission of one question for the entire municipality as set forth in the acts of assembly in such cases made and provided, to wit:

"(a) Act of November 29, 1933 Spec. Sess., P. L. 15, sec. 502, as amended, 47 PS §744-502;

"(b) Act of May 3, 1933, P. L. 252, sec. 32, as amended, 47 PS §100n.

"11. Said special election is void and of no effect.

"12. Plaintiffs herein have a special interest in the result of said special election inasmuch as they are the holders of a retail liquor license issued to them by the Pennsylvania Liquor Control Board for the premises situate on Wilson Avenue within the Borough of Mercer, Mercer County, Pa.

"13. Plaintiffs have no adequate remedy at law and will suffer irreparable loss and damage if the result of said election is certified to the Pennsylvania Liquor Control Board by defendants herein."

R. Roscoe Simons, D. K. Callahan and Lawrence J. Wilhelm, County Commissioners of Mercer County, filed the following answer to the bill:

"1. The petition seeks to obtain an injunction to restrain defendants from certifying the results of a special election on September 9, 1947, and do other acts

proper in the function of the return board when, to the judicial knowledge of the court, respondents did not constitute the return board at the September election. Instead, they were merely candidates for the office of county commissioner and the Hon. George H. Rowley, president judge of the court of common pleas, was the return board and is the only officer against whom the injunction could be directed.

"2. That an injunction cannot properly be issued by a judge sitting in equity against himself as a return board.

"3. That an injunction cannot lawfully issue against a return board to restrain it from certifying the results of a special election, the Election Law requiring the board to compute the votes and certify the results.

"4. That the return, when made by the return board, will show the vote by precinct and that the questions referred to in the petition were submitted on a precinct basis. Hence the remedy sought by petitioners is unnecessary.

"5. That petitioners have no property right involved and are not affected by the election, and hence have no standing to bring this proceeding.

"6. That petitioners have an adequate remedy at law, viz., an appeal from any possible refusal of the Liquor Control Board to renew their license to the court of common pleas in which proceeding they may establish any questions raised in the pending petition.

"7. That it is not necessary to produce in court the unused official ballots showing separate questions for the three precincts because the certification of the return board will show the question as it appeared on the said ballots.

"8. That petitioners are not entitled, in law, to have the ballot boxes opened for the reason that election contests as to referenda on liquor and beer questions are not provided for by the law."

*Findings of fact*

The following facts are undisputed:

"1. Plaintiffs are residents, taxpayers and duly qualified electors of the Borough of Mercer who voted in the primary and special election held in said borough on September 9, 1947.

"2. Plaintiffs are the holders of a retail liquor license issued to them by the Pennsylvania Liquor Control Board for the term beginning August 1, 1947, and terminating July 31, 1948.

"3. On September 9, 1947, a special election was held in said borough to determine the will of the electors with respect to the granting of liquor licenses and licenses for the sale of malt and brewed beverages within said borough.

"4. The Municipality of Mercer comprehends three voting precincts, north, south and east.

"5. The statute authorizing such an election prescribes that the aforesaid questions shall be submitted in the following forms, respectively:

*"Do you favor the granting of liquor licenses*    Yes
*for the sale of liquor in.........of.........?*    No

*"Do you favor the granting of malt and brewed beverage retail dispenser licenses for consumption on the premises where sold in the*    Yes
*.................. of ..................?*    No

"6. In the referendum of September 9, 1947, the ballots used by the electors were in the following form for the east precinct:

"Question 1: *Do you favor the granting of liquor licenses for the sale of liquor in the East*    Yes
*District, Borough of Mercer?*    No

"Question 2: *Do you favor the granting of malt and brewed beverage retail dispenser licenses for consumption on the premises where*    Yes
*sold in the East District, Borough of Mercer?*    No

"The ballots used in the North Precinct were identical in form, except the word 'North' appeared in place

of 'East' upon the ballots. On the ballots used in the South Precinct the word 'South' appeared in place of 'East'.

"7. The official returns of said election have been compiled as follows:

"Question 1: *Do you favor the granting of liquor licenses for the sale of liquor?:*

|  | Yes | No |
|---|---|---|
| East Precinct | 137 | 93 |
| North Precinct | 134 | 173 |
| South Precinct | 146 | 159 |
| Total | 417 | 425 |

"Question 2: *Do you favor the granting of malt and brewed beverage retail dispenser licenses for consumption on the premises where sold?:*

|  | Yes | No |
|---|---|---|
| East Precinct | 144 | 78 |
| North Precinct | 120 | 200 |
| South Precinct | 134 | 178 |
| Total | 398 | 456 |

"7½. The returns from the entire municipality have not been consolidated by the return board. The returns of each precinct have been separately certified on the questions exactly as stated in the official ballots.

"8. Nine ballots were returned from the East Precinct as spoiled."

### Discussion

The principal question for determination is whether the court has the authority to prohibit defendant county commissioners, who also constitute the board of elections, from certifying the results of this local option election to the Liquor Control Board.

The statutes which provide for a local option election prohibit the Liquor Control Board from granting or renewing a license in any municipality wherein the majority of electors have voted against the granting

of such licenses. It is therefore obvious that the Liquor Control Board must obtain the results of every local option referendum, in order to observe the prohibitions imposed upon the board.

Plaintiffs contend that the election was void and therefore that defendants should be restrained from certifying to the Liquor Control Board the returns of an ostensible election that is a nullity.

On the part of defendants, it is argued that since the judge of the court of common pleas superseded the county commissioners for computation of the returns of the votes cast, any injunction granted would, under the circumstances, necessarily be directed against the judge. Such a procedure, defendants say, would be altogether anomalous.

The Pennsylvania Election Code of 1937, P. L. 1333, provides that the county board of elections shall consist of the county commissioners. Numerous duties are imposed upon the board, including the duty of computing the returns of each primary and election.

The statute provides that, where as here, the county commissioners are candidates for nomination or election to public office, they shall not act as members of the board for "computation and canvassing of returns", but the judge of the court of common pleas shall act in their stead in the "computation and canvassing of returns".

It is to be observed that the county commissioners, as the board of elections, are superseded by the judge only as to the "computation and canvassing of returns". Upon completion of the computation, the judge, acting as the return board, certifies the returns, and a copy thereof is filed in the office of the county board of elections. (A separate certificate showing the returns for certain public officers is to be filed with the Secretary of the Commonwealth.)

Upon the filing of the certified returns in the office of the county board of elections, the duty and authority

of the judge, as the return board, terminates and the county commissioners resume all the duties of the county board of elections.

Neither the Election Code nor the local option statutes provide for certifying any returns to the Liquor Control Board. After the certified returns have been filed in the office of the board of elections, they are in the custody of the county commissioners, as the board of elections, and such returns are available for public inspection.

The results of an election are not officially determined until the certified return has been filed in the office of the county board of elections, and simultaneously with such filing the authority of the judge, as a return board, expires. It must be apparent that thereafter any certificate as to what the returns show must be made by the authority which has custody of the official record, in this case, the county commissioners acting as the county election board. Therefore any injunction to restrain the issuing of a certificate of the returns to the Liquor Control Board must be directed to the county commissioners acting as the county board of elections.

The foregoing disposes of the first three objections raised by defendants' answer.

Plaintiffs' bill seeks the production in court of the unused official ballots for the apparent purpose of establishing that the questions on the granting of licenses were submitted by precinct and did not embrace the municipality as a whole.

Defendants answer that the certified returns show that the questions submitted were whether licenses should be granted in the particular election districts, not in the municipality as a whole.

We regard this as a sufficient answer to that portion of plaintiffs' bill.

Plaintiffs further pray that the ballot boxes be produced in court and the entire vote of the three precincts be recounted by the court.

Section 1701 of the Pennsylvania Election Code of 1937, P. L. 1333, provides:

"The court of common pleas, or a judge thereof, of the county in which any election district is located in which ballots were used, shall open the ballot box of such election district used at any general, municipal, special or primary election held therein, and cause the entire vote thereof to be correctly counted by persons designated by such Court or Judge, if three qualified electors of the election district shall file, as hereinafter provided, a petition duly verified by them, alleging that upon information which they consider reliable they believe that fraud or error, although not manifest on the general return of votes made therefrom, was committed in the computation of the *votes cast for all offices or for any particular office or offices in such election district*, or in the marking of the ballots, or otherwise in connection with such ballots. It shall not be necessary for the petitioners to specify in their petition the particular act of fraud or error which they believe to have been committed, nor to offer evidence to substantiate the allegations of their petition." (Italics supplied.)

In Petition of Huston Township Electors, 43 D. & C. 245, it was held that the above provision does not authorize a petition for a recount of the vote cast in a referendum on the granting of liquor or malt beverage licenses.

It is true that the Supreme Court has declared that the contest of a referendum upon the granting of liquor or malt beverage licenses held pursuant to the provisions of the Pennsylvania Liquor Control Act, is not authorized by the Election Code or by any other statute: Greene Township Liquor License Referendum Contest, 331 Pa. 536.

However, Fishingcreek Township Election Case, 144 Pa. Superior Ct. 277, was an appeal from a recount, under the above-quoted section 1701, of the vote cast in a referendum on the granting of liquor and malt beverage licenses. In that case, the Superior Court did not question the right to obtain a recount of the vote on a local option referendum, by petition to the court of common pleas.

In Wilson Liquor License Case, 157 Pa. Superior Ct. 55, the Superior Court refers without criticism to the recount obtained in the court below.

The declaration of the Supreme Court that there is no provision in any law for the contest of a referendum upon the granting of liquor or malt beverage licenses must be understood as employing the term "contest" in its strict sense.

Section 1701, above quoted, provides for a recount of votes. It is not in any sense an "election contest". A distinction has been drawn in all our acts of assembly between a contest of an election and a proceeding for recount of votes. Upon a recount, if the contents of the ballot box are in such condition, or such irregularities appear, as to render impossible a correct count due to fraud, then the returns of the election officers must be accepted, for the recomputation is not a substitute for a contest in which the legality of the votes actually cast may be passed upon.

The act providing for a recount was passed for the purpose of securing an accurate count and a true return of the ballots actually cast. It was not intended to and did not disturb the then existing practice, which required the candidate, who appeared on the face of the returns to be defeated, to contest the election, if he desired a *review of the way in which it was conducted* or of the votes actually cast: Luzerne County Election Returns, 301 Pa. 247.

The present Election Code, just as the act which it replaced, deals with two matters: (1) The computa-

tion and certification of votes as returned, and (2) an election contest after the computation of the returns has been made.

In sections 1701-1703, the Election Code provides a short and expeditious remedy by an opening of the ballot box and a recount by a court of common pleas. This is a recount proceeding. The purpose is to ascertain whether fraud or substantial error has occurred in the computation of the votes or marking of the ballots in a particular precinct. It does not provide for a general investigation of all matters involving the election machinery. (Our recent order for a canvass of the voting machines in Pine Township was a recount proceeding.)

An election "contest" is governed by section 1711. This section provides a complete and comprehensive remedy in the form of a contest whereby all matters may be examined that affect the conduct of the election and the rights of the candidates at such election.

In the light of the Superior Court cases cited above, we are of the opinion that instant petitioners might have availed themselves of the provisions of section 1701 to obtain a recount. Therefore, there being an adequate remedy at law to obtain a recount, equity will not intervene to open the ballot boxes.

There remains for consideration the question whether the court has the power presently to determine the validity of the election.

Plaintiff argues that in Kittanning Country Club's Liquor License Case, 330 Pa. 311, the Supreme Court declared a local option election to be a nullity where the question submitted to the electors was whether licenses should be granted in the particular voting districts. It is true that the Supreme Court there said that the law specifically provided that the question to be submitted shall be whether licenses shall be granted in the municipality as a whole. To argue that the conclusion of the Supreme Court in the Kittanning case

requires us to declare the instant election invalid, is to assume that, at this point, the court may decide the question at all.

As a prerequisite to a decision, plaintiffs have the burden of establishing their right to be in a court of equity. The fundamental rule is that one cannot sustain a suit in equity if he can obtain a remedy by appropriate proceedings in a court of law. The most likely method of challenging the validity of an election is by an election contest.

It seems to be conceded by all parties that plaintiffs cannot avail themselves of an election contest. In Greene Township Liquor License Referendum Contest, 331 Pa. 536, the Supreme Court declared that a contest of a referendum upon the granting of liquor or malt beverage licenses is not authorized by the Pennsylvania Election Code of June 3, 1937, P. L. 1333, or by any other statute. (To those who complain that the foregoing decision creates an unhappy situation, the answer is that more than eight years have elapsed since the decision was announced, meanwhile there have been several sessions of the legislature which failed to remedy the deficiency. If a remedy is needed, the legislature is the authority to provide it.)

Assuming that plaintiffs are without a remedy at law, they are nevertheless still confronted with the principle that a court of equity concerns itself only with the protection of property rights and the maintenance of civil rights of a pecuniary nature. Equitable relief must be predicated on an injurious invasion of fixed and determined property right. It is the rights of property or rather rights *in* property that equity interferes to protect: Kearns v. Howley, 188 Pa. 116, Bispham's Equity (7th ed.), p. 642. Therefore, our inquiry must be whether plaintiffs' property right has been affected by the instant election.

Plaintiffs' existing license continues in effect until July 31, 1948, notwithstanding the election. If it be

argued that that renewal of the license is prejudiced by the election the answer is that plaintiffs have no property right in the renewal since renewal of the license is discretionary with the Liquor Control Board.

In our opinion, plaintiffs were possessed of no property right which has been disturbed by the local option election, consequently they are not in a situation which requires equitable protection or redress.

If the Liquor Control Board should refuse to renew plaintiffs' license for the sole reason that the electors of Mercer had voted against the granting of such licenses, plaintiffs may appeal to the court of quarter sessions and at the hearing of the appeal in quarter sessions, it is conceivable that plaintiffs might then attack the validity of the local option election upon which the board based its refusal.

Our conclusion that plaintiffs are not entitled to equitable relief rests mainly upon the declarations of the Supreme Court in Kittanning Country Club's Liquor License Case, 330 Pa. 311. Plaintiffs' counsel argues that those declarations are obiter dicta. (See Cassell's Estate, 334 Pa. 381.) There may be some reason to contend that such declarations were not necessary to a decision of the Kittanning Club case, nevertheless we believe they are entitled to weight as judicial dicta, at least.

### Conclusions of law

1. No property right of plaintiffs has been affected by the local option election of September 9, 1947.

2. Plaintiffs exhibit no right requiring equitable protection or redress.

3. The bill must be dismissed.

### Nisi decree

And now, October 24, 1947, it is ordered, adjudged and decreed that plaintiffs' bill be dismissed.