## Hollidaysburg Borough Election

*Patrick E. O'Leary* and *Leo C. Mullen*, for protestants.

*Robert C. Haberstroh*, county solicitor, for Blair County commissioners.

*Gerald S. Turner*, for respondents.

PATTERSON, P. J., August 24, 1949.—These two cases were tried together. Therefore the court directs that the opinion filed shall apply to both cases, to wit, June term, 1949, nos. 91 and 92.

Citizens of Hollidaysburg Borough, numbering 723 on the "liquor" petition, and 727 on the "beer" petition, filed petitions with the county commissioners July 15, 1949, requesting the board to submit to the duly qualified electors of Hollidaysburg Borough at the primary election September 13, 1949, in the manner provided by the election laws of the Commonwealth, a question, as follows: "Do you favor the granting of malt and brewed beverage retail dispenser licenses for consumption on premises where sold in the Borough of Hollidaysburg, County of Blair, Pennsylvania?" The question on the "liquor" petition reads as follows: "Do you favor the granting of liquor licenses for the sale of liquors in the Borough of Hollidaysburg, County of Blair, Pennsylvania?"

William A. Schneider, J. C. Strayer, Jesse Strayer, Jr., James Rossi and Joy C. Campalong filed a protest with the county commissioners July 21, 1949, setting forth numerous objections to the petitions, on the grounds that they were legally insufficient and did not comply with the law relative to form, and that they

did not have the required number of signatures of electors, together with other alleged defects.

Hearing was held August 3, 1949, and testimony submitted as follows:

Arthur M. Hess, chief clerk to the board of county commissioners, testified that the petitions were filed with the commissioners July 15, 1949, that he compiled the number of names on each petition, that the "liquor" petition contained 723 signatures and the "beer" petition contained 727 signatures; that at the last preceding general election, to wit, November 2, 1948, the votes in Hollidaysburg Borough were as follows: For the office of President of the United States, 2,262 votes; for the office of State Treasurer, 2,246 votes; for the office of Auditor General, 2,240 votes; for the office of representative in Congress, 2,251 votes; for the office of General Assembly, second district, four candidates (two to be elected), the vote was as follows: 1,785, 1,670, 491 and 449, making a total combined vote for the four candidates of 4,395; that the highest vote cast for any one of the four candidates was 1,785 votes; that in ascertaining the highest vote cast for any office he used the total vote cast for the office of President of the United States, 2,262 votes.

At the hearing protestants did not offer any testimany in support of their objections, except the one relating to the number of electors required to sign the petition.

At the oral argument of the case protestants confined their objection to the fact that the form of the question submitted on the petition did not contain blank squares opposite the words "yes" and "no", and argued that for that reason it did not comply with the form of ballot prescribed by the act of assembly, citing the case of Kittanning Country Club's Liquor License, 330 Pa. 311, in support thereof. An examination of that case, however, shows that the ballot submitted

to the electors in North Buffalo Township, Armstrong County, was erroneous, in that the form on the ballot submitted by the commissioners specified that the referendum was for one of each of two election districts in the township. The court held that the law related only to referendum in municipalities as a whole, and not to election districts. Protestants further referred to the case of Hoover v. Commissioners of the County of Blair, filed to equity docket no. 143, 1943, where the petition contained a penciled "X" opposite the word "No". There the court held that if the commissioners carried out that request then the ballot would be prejudicial to a free expression of the will of the electorate, and further, that the commissioners would have no authority to change the form of question submitted. Here protestants' objection to the petition for the reason that it does not have a blank space opposite the words "Yes" or "No" does not in any way prejudice the free expression of the electorate, and furthermore that law requires the county commissioners to submit a ballot in the form set forth in the act, which provides for blank spaces opposite the words "Yes" and "No". Under the law failure of the petition to set forth a blank space is an immaterial and nonessential omission on the part of petitioners, and would not in any way prejudice free expression of the voters in the referendum election. In the cases of Frederick J. Harper, Jr., Inc. Appeal, 150 Pa. Superior Ct. 569, and the Kittanning Country Club's Liquor License Case, 330 Pa. 311, the courts held that the ballots submitted to the electors were not in proper form and were prejudicial to the free expression of the will of the voters.

On the other hand the Superior Court has held in the Wilson Liquor License Case, 157 Pa. Superior Ct. 55, that nonessential and immaterial omissions or defects which do not prevent a "fair election and an honest return" will not sustain an objection, citing Oncken

et al. v. Ewing, 336 Pa. 43. In the latter case the Supreme Court overruled a complaint that the election was void for the reason that the ballot relating to a special election did not contain the words "Yes" and "No". There the court said, in distinguishing the Kittanning Country Club Liquor License Case, 330 Pa. 311:

"But where the irregularity complained of could not reasonably have misled the voters and did not result in the question at issue being presented to them unintelligibly, the election cannot be judicially overturned because of some innocuous deviation from a statutory requirement which might have been previously rectified through resort to the remedy given by the law for that purpose."

In this case the commissioners, upon whom the law imposes the responsibility of presenting a ballot in proper form, can correct the omission. Therefore, the law requires the court to overrule protestants' objection to the form of the question submitted on the ballot.

At the oral argument of the case protestants stressed their contention that 25 percent of the "highest vote cast for any office" in the municipality or township at the last preceding general election shall be based upon the total vote cast for four candidates (two of whom were to be elected) for general assembly. On the contrary, petitioners contend that the language of the act means the "highest vote cast for any office" such as President or other office where one is to be elected. In this case the total vote cast in the Borough of Hollidaysburg for the office of President of the United States at the last general election was 2,262 votes. The combined vote for four candidates (two to be elected) for general assembly was 4,395 votes. In the enactment of the Liquor Referendum Law by the legislature it apparently intended that petitions for referendum should require a substantial percentage of the electors

of the district and fixed the amount at "25 percent of the highest vote cast for any office at the preceding general election".

Upon examination of the definitions of the word "office", Words and Phrases, Permanent Edition, Vol. 29, page 248, says: "An office is defined by the Century Dictionary as a post, the possession of which imposes certain duties on the possessor, and confers authority for their performance; and by Cochran as a position or appointment entailing certain rights and duties."

"In Black's Law Dictionary, the term 'office' is defined as 'a right to exercise a public or private employment, and to take the fees and emoluments thereunto belonging, whether public, as those of magistrates, or private, as of bailiffs, receivers, or the like' ": 30 A. L. R. 1422-23.

An examination of the word "any" used in the act as "any office" is an adjective. According to Webster's Dictionary the word "any" means: "One of two; either". Winston's Universal Reference Library defines "any" as an adjective derived from "an", "any one" or "any person".

Under these definitions the Local Option Law in using the word "office" must have meant an office where one person is to be elected, and not two or more separate offices. Even though the electors in the Borough of Hollidaysburg and the several municipalities in Blair County vote for two members of the general assembly, each one elected is a separate officer in his own right, and is under no legal obligation or relationship to his colleague in the performance of his official duties. If a vacancy exists during the term of office one is elected by special election to fill the vacancy. In their duties in the House of Representatives they vote separately, serve in individual capacities on committees and in other activities, and draw separate salaries and separate expense accounts. They do not perform

the duties of their office in any dual capacity whatever. Reference to a member of the assembly as an officer means one person, not two, three or four, as the case may be.

The Legislative Apportionment Act of May 8, 1923, P. L. 172, provides for the election of two members of the General Assembly from the Second Blair County District, which includes 15 townships and 8 boroughs. Under the same law the City of Altoona is constituted as the first district, which elects one member of the General Assembly. Neighboring Counties of Bedford, Huntingdon and Centre each elect one member of the General Assembly. In some counties the same law provides that certain districts, including a large number of boroughs and townships, elect three or four members of the General Assembly. Generally, the law, unless it is special legislation, is intended to apply equally to all electors in all municipalities, regardess of their locality. If the contention of protestants is right, then a petition for referendum in any of the 15 townships or 8 boroughs of the County of Blair would require 25 percent of the combined vote cast for four candidates at the general election in 1948. While on the other hand a petition for referendum in the City of Altoona would require 25 percent of the highest vote cast for the office of General Assembly where one is to be elected. On the same basis a petition for referendum in the Township of Catharine, Blair County, would require 25 percent of the combined vote of four candidates for General Assembly, while just across the line in the Township of Morris, in the County of Huntingdon, a petition would require 25 percent of the highest vote cast for the office of assembly where one was to be elected. Likewise, the same situation could arise between the Township of North Woodbury in Blair County and the Township of Woodbury in Bedford County. Furthermore, in a borough in the tenth dis-

trict of Allegheny County, where four members of the assembly are to be elected, a local option referendum would require 25 percent of the combined vote for the office of assembly, which could be equivalent to the total registered vote. The court cannot agree that the legislature intended any disproportionate or unequal requirements in ascertaining 25 percent of the "highest vote cast for any office" in the several municipalities of the Commonwealth. However, as a general rule the total registered vote never turns out at an election. In a case where two or more are to be elected to an office such as assembly the voter may vote for one or as many as are to be elected, whether it be two, three or four. Therefore it is impossible to determine the number of electors who vote for such office, but it can be readily determined how many electors voted by selecting a single office such as President, Governor or other single office at the preceding general election. Section 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552, provides: It is presumed "that the legislature does not intend a result that is absurd, impossible of execution or unreasonable". See also Duddy v. Conshohocken Printing Co., 163 Pa. Superior Co. 150. The Supreme Court, in the case of Spigelmire v. North Braddock School District, 352 Pa. 504, in an opinion by Chief Justice Maxey, quoted from an opinion of the United States Supreme Court in the case of United States v. Kirby, 7 Wall 482, 486, which stated: "All laws should receive a sensible construction." Pursuing the question further, Chief Justice Maxey quoted an opinion by Chief Judge Cardozo, later a Supreme Court justice of the United States, in the case of In re Rouss, 221 N. Y. 81, as follows: ". . . statutes must be so construed, if possible, that absurdity and mischief may be avoided." Protestants' rule could not apply to the City of Altoona for the reason that it is not co-terminus with the Legislative District. This same

proposition is affirmed by the Supreme Court in the case of Harrisburg Sunday Movie Petition Case, 352 Pa. 635, 638.

Under the law the court cannot agree that the legislature, in enacting the Local Option Law, intended to use the words "any office" to mean an office where more than one person is to be elected. On the contrary, in using the word "any" it meant the use as defined by the highest lexicographic authority as one office, and not two offices.

Protestants have cited no appellate court authorities in support of their contention that the basis of calculation is 25 percent of the "highest vote cast for any office" is other than that cast for an office where one is to be elected. If the contention of protestants would be sustained it would be a hard rule which would work both ways, and it would make it practically impossible for any group of citizens to require a referendum in cases where the 25 percent would be calculated on the basis of the combined vote for four candidates in this case (where two are to be elected) ; six candidates (where three are to be elected), and eight candidates (where four are to be elected) to the same office.

Therefore, the objections filed to the petitions for referendum on the questions of "beer" and "liquor" in the Borough of Hollidaysburg are overruled for the reasons hereinbefore stated, and the Commissioners for the County of Blair are directed to submit the questions to the borough electors according to law.

### Decree

Now, August 24, 1949, the objections to the petitions for referendum on the questions of "beer" and "liquor" are overruled. The Commissioners for the County of Blair are directed to submit the questions to the electors of the Borough of Hollidaysburg according to law.