# Knight, Appellant, v. Coudersport Borough.

*Boroughs—Increase of indebtedness—Special election—Returns —Count by court—Printing of ballots—Thickness of paper—Printing showing through ballot—Act of June 10, 1893, P. L. 419— Statutes—Construction.*

1. The law does not require returns of a special election for the purpose of increasing the indebtedness of a borough to be counted by the Court of Common Pleas.

2. If a statute declares a specified irregularity to be fatal to the legality of an election the court will follow that command, irrespective of their views of the importance of the requirement, but in the absence of such declaration the judiciary endeavor to discern whether the deviation from the prescribed forms of law had or had not so vital an influence on the proceedings as probably prevented a full and free expression of the popular will. If it had, the irregularity is held to vitiate the entire election, otherwise it is considered immaterial.

3. Under the Act of June 10, 1893, P. L. 419; anyone possessing the right to participate or having an interest in the result of an election about to be held, is entitled to make a proper examination, in the presence of the county commissioners, of the sample or official ballots.

4. When a ballot is not lacking in any matter essential to a free expression in statutory form of the will of the voter, in the absence of fraud, the remedy for any defect in the ballot is under the Act of June 10, 1893, P. L. 419, which provides, after requiring that all ballots used shall be printed on white paper of sufficient thickness to prevent the printed matter from showing through, that "When it is shown by affidavits that mistakes or omissions have occurred in the publication of names or description of candidates, or in the printing of the ballots, the Court of Common Pleas......may upon application of any qualified elector ......require the county commissioners to correct the mistake."

5. In a proceeding in equity to set aside a special election authorizing an increase in the indebtedness of a borough, the court did not err in dismissing the bill, where it appeared that a majority of the electors voted in favor of the increase of indebtedness; that the ballots used at such election were not of sufficient thickness to prevent the printed matter from showing through; that there was no question of fraud, the selection of the paper for the ballots being a mistake of judgment on the part of the county

commissioners; that no complaint was made before or at the election by any elector, although the sample and official ballots could have been seen by any elector in the commissioners' office; and that no elector was in any manner embarrassed or influenced in the exercise of his franchise by the ballot not having the opaqueness required by the act of assembly.

Argued May 4, 1914. Appeal, No. 148, Jan. T., 1914, by plaintiffs, from decree of C. P. Potter Co., March T., 1914, No. 1, in equity, dismissing bill in equity to enjoin borough from increasing its bonded indebtedness in case of Robert B. Knight and Roscoe S. Bush v. Borough of Coudersport, J. M. Clark, burgess, A. N. Crandall, Jacob Kohl, Hugh Kernan, James Kennedy, J. M. Corbett, Councilmen, and Charles Seitler, borough treasurer. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Bill in equity to set aside special election authorizing increase of borough indebtedness. Before HECK, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the bill. Plaintiffs appealed.

*Error assigned,* among others, was in dismissing the bill.

*W. F. DuBois,* for appellants.—The failure of the commissioners to print the ballots as prescribed by the Act of June 10, 1893, P. L. 419, renders the election illegal and void: Com. v. McHale, 97 Pa. 397; Dewalt v. Bartley, 146 Pa. 529; McLaughlin v. Summit Hill Borough, 224 Pa. 425; Stem v. Bethlehem Borough, 231 Pa. 461; Bullitt v. Philadelphia, 230 Pa. 544; Holtzman v. Braddock, 14 Pa. D. R. 547.

The ballots should have been counted by the Court of Common Pleas: Red Lion School Dist., 14 Pa. D. R. 858; Bethlehem City Water Co. v. Bethlehem Borough, 231 Pa. 454.

*R. R. Lewis,* with him *Archibald F. Jones,* for appellees.—The election should not be set aside because of the quality of the paper upon which the ballots were printed: McLaughlin v. Summit Hill Borough, 224 Pa. 425; Stemm v. Bethlehem Borough, 231 Pa. 461; Independence Party Nomination, 208 Pa. 108; Short v. Gouger, 130 S. W. Repr. 267; Kirk v. Rhoads, 46 Cal. 399; Wheelock's Election, 82 Pa. 297; Krickbaum's Contested Election, 221 Pa. 521; Foy's Election, 228 Pa. 14; Lancaster County v. Lancaster, 160 Pa. 411; Reese v. Lackawanna Elect. Lt., Heat & Power Co., 11 Pa. D. R. 467.

The appellants had a complete, adequate and exclusive remedy at law for the correction of the ballots: Brown's Election, 17 Pa. D. R. 1088; Cassin v. Reeder, 5 Pa. D. R. 681; Town of Groton, 118 N. Y. Supp. 417.

No act of assembly required the vote at the election to be counted by the court: Clough v. Shreve, 10 Pa. C. C. R. 398; Steelton Borough Election, 22 Pa. C. C. R. 593; Forkston Township Election, 12 Pa. D. R. 348.

OPINION BY MR. JUSTICE MOSCHZISKER, July 1, 1914:

This was a proceeding in equity to set aside a special election authorizing an increase in the indebtedness of the defendant borough. After hearing, the court below dismissed the bill; the plaintiffs have appealed.

The appellants contend that the election returns should have been counted by the Court of Common Pleas of the district in which the defendant borough is located. As to this, the trial judge states: "It is admitted that the returns of the election held June 24, 1913, for the purpose of obtaining the assent of the electors of Coudersport Borough to an increase of indebtedness were not canvassed or counted by any court. ......The law does not require the counting or canvassing of election returns for elections to increase borough indebtedness, as is very clearly and forcibly stated in Steelton Boro. Election, 22 Pa. C. C. R. 593, and

Clough v. Shreve, 10 Pa. C. C. R. 398." We have examined all the relevant acts of assembly, and agree with the court below that they do not contemplate or require the returns of a special election of the character of the one under consideration to be counted by the Court of Common Pleas.

The next, and principal, ground of complaint concerns the printing of the ballot. The appellants contend that, "The official ballots used at the said election were not such ballots as the acts of assembly in such cases provide shall be used by the electors, as they were not printed on paper of sufficient thickness to prevent the printed matter from showing through." In this connection, the trial court found, (1) That a large majority of the electors voted in favor of the increase in indebtedness; (2) "That the ballots used at said election were printed by the commissioners of the County of Potter and were not of sufficient thickness to prevent the printed matter showing through"; (3) That, "There was no complaint before or at the election by any elector, that the paper on which the ballots were printed was not of sufficient thickness to prevent the printed matter showing through; nor was any elector embarrassed or influenced in the exercise of his franchise in any manner by the ballot not having the opaqueness required by the act of assembly."

The 15th section of the Act of June 10, 1893, P. L. 419, provides that, "All the ballots used......shall be printed on white paper.......of sufficient thickness to prevent the printed matter from showing through...... When it is shown by affidavits that mistakes or omissions have occurred in the publication of names or description of candidates, or in the printing of the ballots, the Court of Common Pleas......may upon the application of any qualified elector......require the county commissioners to correct the mistake......" This act further provides that the county commissioners shall have printed the "official and......sample ballots (the

latter are supposed to be like the former in every essential particular)......, which tickets shall be kept at the office of the commissioners......"; and it directs that "specimen ballots......printed on tinted paper," also shall be furnished. Finally, the last two sections make it a misdemeanor to counterfeit the official ballots, or for anyone other than the officers charged with their custody, "or a person entrusted by any such officer with the care of the same for a purpose required by law," to take them into his possession.

In addition to the findings already stated, an examination of the testimony shows that, prior to the election, "sample ballots" were on file at the county commissioners' office; and, in the absence of testimony to the contrary, since other requirements of the law would make it necessary, we must assume that these, as well as the official ballots, were in the possession of the commissioners for at least a sufficient number of days before the election to have enabled any interested person to ascertain the fault now complained of, and, if necessary, to proceed for its cure under the Act of 1893, supra. We find nothing in the election laws forbidding a proper examination, in the presence of the commissioners, of the sample ballots, or even of the official ballots, by one possessing the right to participate or having an interest in the result of an election about to be held; and a reading of the Act of 1893, supra, plainly indicates that the legislature intended an opportunity for such an examination, otherwise the remedy therein given to rectify mistakes in the ballot, prior to the holding of elections, would be nugatory and of no avail.

In treating of the phase of the case now before us, the trial judge states, "The reason for equity jurisdiction in cases of this character is inadequacy of the remedy provided by law......No remedy could be more complete and adequate than the informal and summary proceedings provided by the statute. Had the plaintiffs availed themselves of this remedy, any complaint as to the un-

fairness of the election......by reason of the thickness of the paper on which the ballots were printed would have been avoided. The use of the defective ballots would have been prevented and others, meeting the requirements of the law, would have been provided......" Again, in the opinion dismissing the exceptions, the court below takes the position that the selection of the paper for these ballots was a mistake of judgment on the part of the county commissioners, and not the perpetration of a deliberate wrongful act. In other words, the court found the case to be free from the taint of fraud; and in view of the prior findings to the effect that no elector appeared to have been influenced or embarrassed in any manner by the commissioners' mistake, the court held that to set aside the election would be an undue disfranchisement of the electors of the district, citing, Black on Interpretation of Laws (571), where it is said, "If the law declares a specified irregularity to be fatal, the court will follow that command, irrespective of their views of the importance of the requirement. In the absence of such declaration the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed forms of law had or had not so vital an influence on the proceedings as probably prevented a full and free expression of the popular will. If it had, the irregularity is held to vitiate the entire return; otherwise, it is considered immaterial. It has been sometimes said, in this connection, that certain provisions of the election laws are mandatory and others directory. These terms may perhaps be convenient to distinguish one class of irregularities from the other; but strictly speaking all provisions of such laws are mandatory, in the sense that they impose the duty of obedience on those who come within their purview. But it does not therefore follow that every slight departure therefrom should taint the whole proceedings with a fatal blemish. Courts justly consider the chief purpose of such laws, namely, the obtaining of a fair election and an honest

return ...... and in order not to defeat the main design, are frequently led to ignore such innocent irregularities of election officers as are free of fraud and have not interfered with a full and fair expression of the voter's choice." We concur in the views so well stated by the learned court below. When a ballot is not lacking in any matter essential to a free expression in statutory form of the will of the voter, in the absence of fraud, the applicability and completeness of the remedy under the Act of 1893, supra, seem so clear as to require no further discussion; and the conclusion that, under the circumstances at bar, the election should not be set aside, is fully sustained, in principle, by our own cases: See, Wheelock's Election, 82 Pa. 297, 299; Krickbaum's Contested Election, 221 Pa. 521, 525, 528.

Of course, had the statute expressly provided that a mistake of the character of the one here complained of, should invalidate an election, the rule of Foy's App., 228 Pa. 14, would apply; but in that instance while the election was declared void, yet, we recognized the principle that even in the presence of an express statutory mandate, a judge should be most careful in exercising his power to annul an election, saying, (p. 19), "A court ought always to be slow to set aside an election ...... but when the legislature has ordained that under a certain state of facts it shall so act, and such facts plainly appear upon the record, the duty is clear, and there should be no hesitation about declaring the election invalid."

The several Pennsylvania authorities relied upon by the appellants are on their facts so plainly distinguishable from the case at bar that they do not call for discussion, but, we may add that the question of the remedy given by the Act of 1893, supra, does not seem to have been raised or passed upon in any of them; it is not necessary to consider the point that this remedy is confined to "qualified electors," for the plaintiffs ex-

pressly aver in their bill that they are "duly qualified electors."

The assignments of error are overruled, and the decree is affirmed at the cost of the appellants.