Oncken et al., Appellants, *v.* Ewing.

44

Argued September 8, 1939.   Before KEPHART, C. J., SCHAFFER, LINN, STERN and BARNES, JJ.

*George H. McWherter,* for appellants.

*Charles C. Crowell,* with him *Howard H. Whitehead* and *Dan V. Crowell,* for appellees.

PER CURIAM, September 8, 1939:
Decree affirmed at appellants' cost; opinion to be filed later.

OPINION BY MR. JUSTICE STERN, September 25, 1939:
The Act of April 26, 1929, P. L. 836, as amended by the Act of May 22, 1933, P. L. 838, provides that whenever a constitutional amendment or other question is submitted to the vote of the electors it shall be printed upon the ballot in brief form and shall be followed by the words "yes" and "no" with appropriate squares for the insertion of a cross mark.

At a special election on November 3, 1936, there was presented to the electors of the Borough of Arnold, Westmoreland County, the question whether it should become a city of the third class. The official ballot prepared by the County Commissioners and used in the election was as follows:

TO VOTE IN FAVOR OF THIRD CLASS CITY, MARK A CROSS (X) OPPOSITE THE WORDS "FOR CITY CHARTER."
TO VOTE AGAINST THIRD CLASS CITY, MARK A CROSS (X) OPPOSITE THE WORDS "AGAINST CITY CHARTER."

| Shall the Borough of Arnold, Westmoreland County, Pennsylvania, become a City of the Third Class, to be known as the City of Arnold? | FOR CITY CHARTER | |
|---|---|---|
| | AGAINST CITY CHARTER | |

The vote was 1788 for the charter and 1306 against it. Plaintiffs, electors of the borough, filed a bill in equity praying that the Clerk of the Court of Quarter Sessions of the county be enjoined from certifying the result of the election to the Secretary of the Commonwealth, and that the election be declared null and void. The court dismissed the bill.

Plaintiffs' case rests upon the absence of the words "yes" and "no" from the official ballots. Defendant contends that the form of ballot required in such an election is governed, not by the Acts of 1929 and 1933 previously referred to, but by the Third Class City Law of June 23, 1931, P. L. 932, section 204, which provides that the electors shall designate with a cross-mark in one of the squares on the ballot their desire to vote for or against a third-class city charter, but makes no provision for the words "yes" and "no." Defendant further argues that even if the applicable acts were those of 1929 and 1933 the ballot which was used did not deviate substantially from their requirements; that equity has no jurisdiction to pass upon the legality of an election; and, finally, that if plaintiffs thought

the ballots were defective they should have sought their correction *before* the election.

The Act of June 10, 1893, P. L. 419, section 15,* provides that the court of common pleas may, upon application of any qualified elector, require the county commissioners to correct any mistake or omission in the printing of the ballots. In *Knight v. Coudersport Borough,* 246 Pa. 284—a decision which controls the present case—an attempt was made to have a court of equity set aside an election authorizing an increase in the indebtedness of a borough, the complaint being that the ballots were not printed on the kind of paper required by act of assembly. It was held that, since any interested person could readily have ascertained the imperfection in the ballots before the election and have proceeded to remedy the defect under this section of the Act of 1893, it was too late *after* the election to seek to invalidate it on that ground. It was pointed out that the statute offered complete and adequate relief and, the plaintiffs having failed to avail themselves of it, it would be an undue disenfranchisement of the electors were the court later to set the election aside. The court said (p. 290) : "When a ballot is not lacking in any matter essential to a free expression in statutory form of the will of the voter, in the absence of fraud, the applicability and completeness of the remedy under the Act of 1893, supra, seem so clear as to require no further discussion; and the conclusion that, under the circumstances at bar, the election should not be set aside, is fully sustained, in principle, by our own cases."

It is established generally throughout American jurisdictions that one who does not utilize the opportunity afforded by statute to object to irregularities in the ballot before the election may not afterwards raise objections thereto. It would be unjustifiable, and indeed

---

* This section was substantially reënacted by section 1010 of the Election Code of June 3, 1937, P. L. 1333.

intolerable, after the electorate has clearly expressed its will, for a court to declare an election null and void merely because of some inconsequential defect in the form of the ballot, especially where, as here, the law furnishes to every elector a method whereby the necessary correction may be made prior to the election. For a voter, under such circumstances, to be allowed to withhold his complaint until he learns that the election has resulted unfavorably to his views or his candidates would be as unjust as to permit a litigant to challenge an adverse verdict because of some technical flaw in the trial as to which, with knowledge, he had chosen to remain silent.

The invalidation of a public election is a judicial act of serious import, and is justified only by circumstances of the most compelling nature. Of course, there may be cases where there has been deliberate fraud on the part of election officials; or where a statute expressly provides that certain mistakes or defects in the ballots shall invalidate the election; or where some fundamental preliminary of the election has been ignored, as in *Nyce v. Board of Commissioners,* 319 Pa. 353; or where, as in *Kittanning Country Club's Liquor License Case,* 330 Pa. 311, the form of the ballot is so lacking in conformity with the law and so confusing that the voters cannot intelligently express their intentions; in such instances it may be proper and necessary for a court to nullify an election. But where the irregularity complained of could not reasonably have misled the voters and did not result in the question at issue being presented to them unintelligibly, the election cannot be judicially overturned because of some innocuous deviation from a statutory requirement which might have been previously rectified through resort to the remedy given by the law for that purpose. As was said in *Bowers v. Smith,* 111 Mo. 45, 20 S. W. 101, quoted in Black on Interpretation of Laws, p. 571, and from the latter in *Knight v. Coudersport Borough,* supra, and

again in *Commonwealth ex rel. Gast v. Kelly*, 255 Pa. 475, 481, in *Fish's Election*, 273 Pa. 410, 415, 416, and in *Luzerne County Election Returns*, 301 Pa. 247, 256, 257: "If the law itself declares a specified irregularity to be fatal, the courts will follow that command, irrespective of their views of the importance of the requirement. In the absence of such declaration, the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed forms of law had, or had not, so vital an influence on the proceedings as probably prevented a free and full expression of the popular will. If it had, the irregularity is held to vitiate the entire return; otherwise, it is considered immaterial. . . . It does not . . . follow that every slight departure [from the provisions of the election laws] should taint the whole proceedings with a fatal blemish. Courts justly consider the chief purpose of such laws, namely, the obtaining of a fair election and an honest return, as paramount in importance to the minor requirements which prescribe the formal steps to reach that end; and, in order not to defeat the main design, are frequently led to ignore such innocent irregularities of election officers as are free of fraud and have not interfered with a full and fair expression of the voters' choice."

The ballot used in the election here under consideration was readily comprehensible, and the words "yes" and "no" would not have added to its clarity. Their omission constituted so negligible a departure from the prescribed form, even if the Acts of 1929 and 1933 be accepted as the governing statutes,—which it is unnecessary to decide—that it would gravely infringe upon the rights of the electorate for the court to nullify the expression of their will, especially since the request is made by electors who, had they really regarded the alleged defect as important, might so readily have availed themselves of the remedial provisions of the statute.

The decree is affirmed at cost of appellants.