## McGreevy et al. v. Washington County Commissioners

*Jay W. Troutman*, for plaintiffs.

*David H. Weiner*, county solicitor, for defendants.

BURNSIDE, J., February 15, 1941.—On November 25, 1940, Jane McGreevy and Lily Eckels filed at the above number in equity what they term a "Petition to Invalidate Election on Referendum and to Enjoin the County Board of Elections from Certifying the Computation of Votes Thereon." Defendants named in said petition are John N. O'Neil, John D. Berryman, and Ross R. Cummins, in their official capacity as county commissioners, and as members of the county board of elections. Service of this petition was accepted by defendants through their attorney, said defendants agreeing "that the county board of elections be temporarily enjoined from certifying the results of the computation of votes cast on the question of referendum relating to the exhibition of motion pictures on Sundays in the Borough of McDonald to the acting chief execu-

tive officer until a final rule is made on the within petition".

On November 25, 1940, as a result of said agreement on the part of defendants, this court made an order temporarily enjoining the county board of elections from certifying the results of their computation of the votes cast on the question of the referendum as aforesaid in the Borough of McDonald, and ordered the case for hearing at the next argument court.

Although said petition was defective in form in that it did not comply with the Equity Rules, defendants failed to raise any preliminary objections, and elected to treat such petition as a proper bill in equity by filing an answer to each paragraph of the petition, which answer admitted sufficient of the facts alleged by petitioners to enable the court to make proper findings of fact. The case was then argued before the court in banc on bill and answer. From the pleadings we make the following

### Findings of fact

1. That plaintiffs, Jane McGreevy and Lily Eckels, are residents and qualified electors of the fifth precinct of the Borough of McDonald, Pa.

2. The Borough of McDonald is divided into four election districts, numbered 1, 2, 3, and 5. Precinct 4 has heretofore been consolidated with another precinct. Precincts 1, 2, and 3 are located within the borders of the County of Washington, and precinct 5 is located within the borders of the County of Allegheny.

3. That pursuant to the provisions of section 5 of the Act of July 2, 1935, P. L. 599, a petition for a referendum was duly filed with the County Commissioners of Washington County, Pa., pertaining to the exhibition of motion pictures on Sundays in said Borough of McDonald.

4. Official ballots setting forth the question of said referendum were provided and made available for all voters of such election districts in said Borough of Mc-

Donald which were located within the County of Washington, for the general municipal election held on November 5, 1940. No ballots were made available for the said fifth precinct, situate in Allegheny County, by reason of the failure and neglect of the County Commissioners of Washington County to certify to the County Commissioners of the County of Allegheny the information concerning said referendum, so that the County Commissioners of Allegheny County did not provide ballots relating to the referendum to the voters in said precinct.

5. That on November 5, 1940, the voters of those voting precincts which are located in Washington County cast 714 votes against the allowance of the exhibition of motion pictures in said Borough of McDonald on Sundays, and 483 votes were cast in favor of allowing such Sunday exhibition of pictures, said referendum being defeated in said precincts located in Washington County by 231 votes.

6. That in the fifth precinct of the Borough of McDonald there are approximately 346 registered voters, who were deprived of their right to vote by reason of their failure to receive ballots pertaining to said referendum, so that the results of the election might have been changed had the voters in said fifth precinct been afforded an opportunity of casting their votes on said question.

### Discussion

A decision as to the validity of the election held on November 5, 1940, insofar as the motion picture referendum in the Borough of McDonald is concerned, requires consideration of certain acts of assembly, and also consideration of a certain constitutional provision.

The Act of July 2, 1935, P. L. 599, sec. 5, 4 PS §63, provides in part:

"In any municipality *the will of the electors* with respect to the conducting, staging, and exhibiting of motion pictures and sound motion pictures on Sunday may, after the year . . . [1935], but not oftener than once

in five years, be ascertained, and the question, as provided in section 3 of this act, shall be submitted to the *electors of any municipality* upon demand in writing of petitioners equal to at least five per centum (5%) of the highest vote cast for any candidate in the municipality at the last preceding general or municipal election." (Italics supplied.)

The act then provides:

"If a *majority of the voters*, in any municipality . . . are not in favor of the continuance of such exhibitions, then upon the certification of such election return to the acting chief executive officer of such municipality, . . . it shall thereafter be unlawful to conduct, stage, manage, operate or engage in such exhibitions after two o'clock postmeridian, on Sunday; . . ." (Italics supplied.)

It will be noted that the Act of 1935 provides that the referendum shall be submitted to "the will of the electors" and makes Sunday exhibition unlawful if "a majority of the voters" in any municipality are not in favor of the continuance of such exhibitions. Clearly it was the legislative intent in submitting the referendum to the "electors of any municipality" that all qualified electors would have an opportunity to express their views upon the question. If everyone had had a chance to vote upon the subject it would have made no difference if some did not see proper to avail themselves of the opportunity; but as there were no ballots presented to a large number of the qualified voters in the Borough of McDonald, it would be unfair to treat as a legal election the result as shown by the count of the votes cast by only a portion of the voters.

Clearly the election held on November 5, 1940, was not an expression of all the "electors of the municipality", and the "will of the electors" with respect to the referendum was not properly ascertained in accordance with the legislative intent.

We feel that the manner in which the election was held was in violation of the spirit of article I, sec. 5, of

the Constitution of the Commonwealth of Pennsylvania, which provides:

"Elections shall be free and equal. . . ."

Elections are not free and equal when voters are denied the right and opportunity to cast their votes: Winston v. Moore, 244 Pa. 447. Elections are "free and equal" only when all who possess the requisite qualifications are afforded a reasonable opportunity to vote.

It so happens that the particular question involved by the facts of this case has never been decided by the courts of this Commonwealth. A similar question was before the Court of Appeals of Kentucky in the case of Wallbrecht et al. v. Ingram et al., 164 Ky. 463, 175 S. W. 1022. In that case the law required the county clerk to furnish 50 percent more ballots for each precinct than there were votes cast in the said precinct at the last State or National election. The question to be voted on was a referendum of the liquor laws, and the voters turned out in vastly greater numbers than they had turned out at the preceding State and National election, so that in certain precincts there was an insufficient number of ballots furnished for the accommodation of the voters on the question of this liquor referendum. The Court of Appeals in construing the Kentucky Constitution, which is worded exactly the same as our own, used the following language (p. 473) :

"The question then is, was the election a free and equal one within the meaning of the Constitution, and if it was not, what should be declared to be the result? Strictly speaking, a free and equal election is an election at which every person entitled to vote may do so if he desires, although in dealing with the practical aspect of elections it could hardly be said that if only a few were prevented from voting the election would not be free and equal in the constitutional sense. The very purpose of elections is to obtain a full, fair and free expression of the popular will upon the matter, whatever it may be, submitted to the people for their approval or

rejection, and when any substantial number of legal voters are, from any cause, denied the right to vote, the election is not free and equal in the meaning of the Constitution."

The opinion cites the case of Early et al. v. Rains et al., 121 Ky. 439, 89 S. W. 289, where the court set aside an election because a majority of the legal voters were not given an opportunity to vote. In that case the court said (p. 451) :

"All legal voters should have the privilege and right. Where it is denied to any substantial extent, it is an invasion of the highest right of the citizens, and tends to substitute other means of determining the popular will, for elections held by the people. Such course, however innocent its motive, can not be too severely discountenanced."

In the case at bar it is plain that the result of the election might have been changed had the registered voters of the fifth precinct of the Borough of McDonald been allowed to vote upon the referendum. Clearly, in view of the legislative intent, and a proper construction of the constitutional provision we have quoted relating to elections, this election should not be allowed to stand.

There being no provision in the election laws by which the validity of a referendum of this character may be challenged (our courts having held that the statutory provisions for election contests refer exclusively to the election of public officers, and do not authorize a contest of a referendum: See Greene Township Malt Beverage License Referendum Contest, 331 Pa. 536), the court of equity has jurisdiction to grant the relief prayed for. The courts of common pleas have the power and jurisdiction of courts of chancery, so far as relates to "the preventing or restraint of the commission or continuance of actions contrary to law and prejudicial to the interests of the community or the rights of individuals."

See Act of June 16, 1836, P. L. 784, sec. 13, 17 PS §282, extended by section 1 of the Act of February 14, 1857, P. L. 39, 17 PS §283.

"Equity will not suffer a wrong to be without a remedy." This maxim includes the whole theory of equity jurisdiction, that it affords relief wherever a right exists and no adequate remedy at law is available. It is the application to equity of the broader legal maxim: Ubi jus ibi remedium. The fact that there is no precedent will not deter a court of equity from awarding relief in a proper case. See 21 C. J. 198, §188.

The Court of Common Pleas of Lebanon County, on petition filed by a qualified elector, set aside a local option election held on a liquor referendum, on the ground that illegal votes had been deposited in the ballot box: In re Election in East Hanover Township, 36 D. & C. 246.

In the following cases courts of common pleas sitting in equity have invalidated elections held for the purpose of increasing borough indebtedness because of some serious error in the manner in which such elections were held: Holtzman et al. v. Braddock, 30 Pa. C. C. 267; McLaughlin v. Summit Hill Borough, 224 Pa. 425; Stem v. Bethlehem Borough, 231 Pa. 461. See also Knight v. Coudersport Borough, 246 Pa. 284, and Oncken et al. v. Ewing, 336 Pa. 43.

It is our opinion that this court has jurisdiction to declare such election invalid, and to restrain the county board of elections from certifying the results of their computation of the votes cast on said referendum to the acting chief executive officer of the Borough of McDonald.

### Conclusions of law

1. That Jane McGreevy and Lily Eckels are qualified voters of the fifth precinct of the Borough of McDonald and are entitled to file the bill in this case.

2. That the election held on November 5, 1940, in the Borough of McDonald on the referendum relating

to the exhibition of motion pictures on Sundays, violated both the statutory and constitutional provisions quoted in the above discussion, and that said election is therefore invalid.

3. That the County Board of Elections of Washington County should be restrained from certifying to the acting chief executive officer of the Borough of McDonald the results of their computation of the votes cast on said referendum at the election held on November 5, 1940.

4. That unless exceptions be filed sec. reg. to this adjudication a decree in the following form shall be entered by the prothonotary:

"And now, —————————, 1941, this cause came on to be heard on bill and answer, and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged, and decreed as follows:

"1. That John N. O'Neil, John D. Berryman, and Ross R. Cummins, in their official capacity as members of the county board of elections, be perpetually restrained by injunction from certifying to the acting chief executive officer of the Borough of McDonald the results of their computation of the votes cast on the motion picture referendum held in said borough on November 5, 1940.

"2. That the election held on November 5, 1940, on the question of whether or not Sunday motion pictures in said borough should be allowed or prohibited, is hereby declared to be null and void.

"3. That the costs of this case be paid by the County of Washington."

*Interlocutory order*

And now, February 15, 1941, it is ordered that the foregoing adjudication be filed of record and that notice thereof be given by the prothonotary to counsel of record, and if no exceptions be filed thereto sec. reg. that a final decree be entered as above designated in the conclusions of law.