## Hazle Township Election

Before Aponick, Flannery and Lewis, JJ.

*Edmund J. McCullough*, for petitioners.

*Edward J. Bonin*, for respondent.

LEWIS, J., March 9, 1950.—This is a case involving a rule to show cause why the petition contesting the election of Lewis Panzarella to the office of justice of the peace of Hazle Township, Luzerne County, Pa., should not be quashed.

On November 28, 1949, 76 days following the primary election, 20 qualified Democratic voters filed this petition in which they seek to have the court declare the office of the justice of the peace in Hazle Township vacant, and the election of Lewis Panzarella to this office null and void because of alleged irregularities in the primary election returns.

That Panzarella was duly nominated by Republican voters in the primary election on September 13, 1949,

is not disputed. It is likewise conceded that respondent, Panzarella, received a plurality of the votes cast at the general election on November 8, 1949.

However, petitioners contend the general election should be upset because one Fred Delazio was in fact nominated by the Democratic voters at the primary election on September 13, 1949, but that his name was not on the ballot for the general election held November 8, 1949. Instead, the name of Stephen Hiza appeared as the Democratic nominee on the ballot for the general election, and the returns from the general election revealed that Hiza was defeated by the Republican nominee, Panzarella.

In effect, this petition represents an attempt to correct an alleged error of computation which occurred in a primary election by contesting the results of the general election. In this case, there were two candidates for the Democratic nomination. The wrong candidate was certified as the Democratic nominee by the election board.

The petition avers that the returns of the primary election gave Hiza 598 votes for the Democratic nomination for the office of justice of the peace, and his opponent, Delazio, 502 votes for the Democratic nomination.

However, petitioners claim that the alleged majority of 96 votes cast for Hiza at the primary election were false and fraudulent. They further contend that, as a result of this fraud, the voters of Hazle Township were not afforded the opportunity to vote for the actual Democratic nominee, to wit, Fred Delazio.

Contestants further aver that the presence of the name of Stephen Hiza on the machine for the general election was the result of fraud or mistake on the part of the election officials.

It is contended that in one district known as the Jeddo District of the township, Hiza received only 59

votes at the primary election, whereas he was credited with 159 votes. In the second instance, in the district of Milnesville, it is alleged that Hiza received 65 votes, whereas he is credited with 165 votes. In this latter district Delazio received seven votes, which, if correct, added to the 165 votes allegedly received by Hiza would make the total Democratic vote cast 172. It is petitioners' contention that there were only a total of 121 Democratic voters registered in the district.

Finally, it is contended that the 200 votes which were allegedly not cast for Stephen Hiza, but with which he was credited, caused the county election board to certify that Hiza received a plurality of the Democratic votes cast at the primary election for the office of justice of the peace. Consequently, Hiza was certified as the Democratic nominee for that office at the general election instead of Delazio.

To this petition, respondent, Lewis Panzarella, through counsel, filed a motion to quash and assigned as his reasons, the following:

"1. Contestants have been guilty of laches.

"2. Contestants are endeavoring to change the results of the primary election of 1949.

"3. The county election board publicly announced the results of the 1949 primary election at its offices, concerning the final result of the election held in Hazle Township, and contestants did nothing concerning it.

"4. The face of the petition clearly indicates that the statute of limitations has run.

"5. The petition reveals that contestants' proper remedy was an appeal from the official count of the election board.

"6. There is nothing in the petition to indicate that the final result of the November 8, 1949, election would have been different.

"7. Assuming that the election board erroneously certified the name of Stephen Hiza as the Democratic

nominee for the justice of the peace of Hazle Township the proper remedy of the contestants was a writ of mandamus to correct the same.

"8. The question has become moot."

It is our opinion that the motion to quash is well-founded and should prevail in the instant case.

As stated earlier, although contestants' petition purports to contest the outcome of the general election, it is in effect a petition to contest the result of the primary election for the office of the justice of the peace.

The law with regard to such cases is strictly statutory. Elections and their regulations are exclusively for the legislature. See Thompson v. Morrison, Secretary of Commonwealth, 352 Pa. 616.

The Election Code of June 3, 1937, P. L. 1333, provides pertinent time limitations which apply to primaries as well as elections. They are as follows:

(1) A petition for a recount must be filed within five days after the completion of the computation of the votes: Section 1404(f), 25 PS §3154 and section 1703(a), 25 PS §3263;

(2) An appeal from an order or decision of the county board regarding computation must be made within two days after such order: Section 1407(a), 25 PS §3157;

(3) A petition for a contest must be filed within 20 days after the day of election: Section 1756, 25 PS §3456.

It is true that contestants have filed their petition within 20 days of the general election. However, the errors they seek to correct occurred at the primary election, which was held 76 days before the petition was filed. They are too late.

Contestants would have us deprive Lewis Panzarella of the office of justice of the peace when it is conceded that he received a plurality of votes at the general election. We would deprive an innocent third man of

the office to which the voters of Hazle Township elected him. This would be highly unfair and inequitable when the situation could have been remedied earlier had either Delazio or contestants been alert.

Delazio, who was the defeated Democratic nominee at the primary, as well as contestants, sat idly by from September 13th until November 28th, before taking action. As a matter of fact from September 13th, the date of the primary, until the general election, neither contestants nor Delazio availed themselves of the protection and various safeguards provided by the Election Code of 1937, supra.

Contestants contend that they were not aware of the alleged mistake in the certification of the Democratic nominee until November 7th, one day before the general election. They complain that the local newspapers proclaimed Delazio as the Democratic nominee for the office. Contestants had no right to rely upon the returns as printed in the local newspapers.

The code provides that immediately after the vote has been ascertained, the statement thereof shall be posted on the door of the polling place. It is presumed that the board complied with the law because no one alleges the fact that such was not done. If this statement had been examined, the error could have been discovered on the day of the primaries.

Section 310(a), 25 PS §2650 of the Election Code provides that all candidates have a right to be present in person or by counsel at the canvass of the votes by the county return board. Although this is not mandatory, it is incumbent upon an officer seeker to be diligent and not dilatory. In this case, neither Delazio nor petitioners availed themselves of this safeguard provided by the legislature.

Under the code the election board must publicly announce by posting in its offices the results of primaries

and elections for county, city, borough, township, etc., offices. In the face of anything to the contrary on the record, it must be presumed that the name of Stephen Hiza was posted in the office of the Luzerne County Election Board as the successful candidate for the Democratic nomination for the office of justice of the peace. See Ellwood City Borough's Contested Election, 286 Pa. 257. It is a legal presumption that the election board did everything it was required to do under the statute. See Ellwood City Borough's Contested Election, supra.

This was public notice concerning the successful candidates in the primary election. Apparently, Delazio had no reason to feel aggrieved by the action of the county board, and therefore, took no appeal from its decision.

The Election Code further provides in section 1008, 25 PS §2968(c), that the county election board deliver, upon request, on the Thursday preceding each general election, two specimen ballots or diagrams for each election district within the county in which candidates for such party or political body are to be voted for. Thus, six days before the election, the aggrieved party, as well as anyone else interested, could have discovered that his name was not on the voting machine and taken the appropriate steps at that time. There must be finality to elections, and one may not sit idly by when his personal interests are involved, and then endeavor to deprive another of an office to which he was rightfully elected. That is why the legislature provided the numerous safeguards to candidates and their supporters.

We have pointed out that Delazio took no appeal after the primary election as provided for by statute.

There may have been some irregularities in the conduct of the primary election, and there are indications

that in one district, more Democratic votes were tallied than there were Democrats registered. We feel, however, that the Election Code provided sufficient opportunity for both Delazio and contestants to correct these irregularities at an earlier date.

It is fundamental that a court should exercise the power to discard the return of an election with great caution because of the danger of disfranchising innocent voters. The invalidation of a public election is a judicial act of grave importance and is justified only by circumstances of a most compelling nature. See Oncken et al. v. Ewing, 336 Pa. 43.

To permit contestants to upset the results of the general election in this case, in effect, would allow them to contest the results of the primary election. If this is allowed, there would be no finality to any public election, and the importance of finality is obvious. Here, there was ample time and opportunity to complain before the ballots were printed for the general election, and likewise to correct them before the general election.

To reiterate and recapitulate, the aggrieved party or contestants could have been present at the computation of the primary vote by the county election board. They were not present. They could have checked the computed returns posted at the office of the county election board. They did not do this. They could have requested specimen ballots five days prior to the general election to make certain that the ballot was in proper form. They did not do so. Evidently, they did not feel aggrieved by the results of the primary election.

Failure to object to irregularities in a nomination of a candidate within the time and within the mode prescribed by statute constitutes a waiver of the objection, and it cannot be thereafter raised on an election

contest. See Snodgrass' Contested Election, 29 Dist. R. 562, affirmed 267 Pa. 494; County Controller's Election, 13 Northumb. 205.

If a candidate is aware and has ample opportunity before election to discover that the ballot is defective in form, he should not be heard to complain 76 days after the primary election, neither should others in his behalf.

Now, therefore, March 9, 1950, rule is made absolute and petition contesting the election of Lewis Panzarella to the office of justice of the peace of Hazle Township, this county, is quashed.