**Providence Township Local Option Referendum**

574

*Robert T. Potts,* for petitioner.
*Wm. P. Manning, Jr.,* contra.

PER CURIAM, April 20, 1953.—The Liquor Code of
April 12, 1951, P. L. 90, sec. 472, provides that when

electors equal to at least 25 percent of the highest vote cast for any office in the municipality at the last general election shall file a petition with the county board of elections for a referendum on the question of granting liquor licenses in such municipality, such question shall be submitted to the electors at the succeeding primary election.

On March 16, 1953, a petition was filed with the county board of elections under the section, requesting that the above question be submitted to the electors of Upper Providence Township at the primary election to be held on May 19, 1953.

The petition was signed by 632 persons and it is agreed that the required number is 455. The board of elections found that 10 names had been stricken out, one name was stricken out as afterdated and 139 names were stricken out as predated. The board then certified to the court that the petition contained 482 names which were prima facie valid.

On March 27, 1953, two registered electors in the township filed a petition on which a rule was allowed to show cause why the petition for a referendum should not be stricken off for lack of proper signatures. Hearings were held on April 2 and April 10, 1953. The objectors to the petition for referendum make over 400 objections to the signatures on the petition.

These objections may be classified as follows: Predated and afterdated; not registered; defective address; fraudulent petition; illegal occupation.

In considering objections such as these, courts keep in mind that the purpose of a referendum under the local option provisions of the Liquor Code is to obtain a full and fair expression of the voters' choice and that the statute providing for a referendum should be liberally interpreted in favor of the opportunity of the voters to express their convictions on the ques-

tion: Oncken v. Ewing, 336 Pa. 43 (1939); Michalow Nomination, 75 D. & C. 607 (1950); Mason et al. v. Callahan et al., 61 D. & C. 649 (1947).

That this is also the legislative policy is shown by section 977 of the Election Code, which provides liberally for amendments as to material errors or defects apparent on the face of petition or paper. Here over one third of the registered voters of Upper Providence Township have indicated in no uncertain manner their desire to vote on whether or not liquor licenses should exist in the township. This desire should not be defeated or frustrated by captious and immaterial objections which relate to errors and defects of form, rather than substance. With these preliminary observations, we will consider the objections.

The most important of all the objections is that relating to the predating of the petition, which involves 139 signatures.

The Liquor Control Act of April 12, 1951, P. L. 90, supra, provides that the petition for a local option referendum must be filed at least 60 days before the primary election at which the question comes before the electors. The act provides, section 472:

"Said proceedings shall be in the manner and subject to the provisions of the election laws which relate to the signing, filing and adjudication of nomination petitions, in so far as such provisions are applicable."

Section 913 of the Election Code of June 3, 1937, P. L. 1333, as amended by the Act of March 6, 1951, P. L. 3, sec. 7, provides:

"(d) All nomination petitions shall be filed at least sixty-four (64) days prior to the primary."

Section 908 of the Election Code, supra, provides that:

"No nomination petition shall be circulated prior to 20 days before the last day on which such petition may be filed."

The primary election in 1953 will be held May 19th and the last day for filing petitions under the local option provisions of the Liquor Control Act would be March 20th.

If the provisions of the Election Code are applicable as to the filing date, then the last day for filing a petition under the local option provisions of the Liquor Control Act would be March 16th, or 64 days before the primary.

One hundred and thirty-nine of the signers of the petition signed between February 24 and 28, 1953. Whether or not these 139 signatures are valid depends on whether the Liquor Code or the Election Code controls the date for the filing of petitions under the local option provisions of the Liquor Code.

The Liquor Code provides that local option petitions must be filed at least 60 days before the primary, but contains no directions as to when the petition may be circulated or signed. For information on that point, the Liquor Code refers to the Election Code and that code provides, sec. 908:

"No nomination petition shall be circulated prior to 20 days before the last day on which such petition may be filed."

The local option provisions in the Liquor Code pertain to a particular or special kind of election, namely a referendum on the question of local option. These provisions therefore take precedence over the general law of elections as contained in the Election Code. Inasmuch as the Liquor Code contains no provisions as to the time in which a petition under the local option section must be circulated, we must look to the Election Code for guidance, for it is unreasonable to suppose that the legislature intended that these petitions could be signed at any time. As above set forth, the election code provides that nominating petitions cannot be circulated prior to 20 days before the last

day on which such petition may be filed. This is not a nominating petition, but in the absence of any other guide, we think the time limit is applicable to petitions under the local option provisions of the Liquor Code. The last day for filing this petition was March 20th and therefore the signatures on the petition dated between February 24th and 28th are invalid and the board of elections properly refused to consider them. See Cannon v. Peters et al., 36 D. & C. 195; Kram v. Kane et al., 336 Pa. 113 (1939). . . .

### Defective Address

In the petition to set aside the local option petition, the objectors contend that 203 of the signatures should be cast out because of the defective address given by the signers. The objectors have produced no evidence whatever to support the objections, outside of the petitions themselves.

The alleged defective addresses fall into several classes: First, where the name of the town alone is given (e.g., Oaks, Mont Clare, Yerkes, Trappe); second, where a street or road is given and no house number; third, where the post office address is given, such as an R. D. number.

In reference to addresses, the Election Code provides, sec. 908:

"He shall add his . . . and residence, giving city, borough or township, with street and number, if any, . . . Provided, however, That if the said political district named in the petition lies wholly within any city, borough or township, or is co-extensive with same, it shall not be necessary for any signer of a nomination petition to state therein the city, borough or township of his residence."

Under this, the signers were not required to give Upper Providence Township as part of their address. We take judicial notice that the Township of Upper

Providence is largely rural with several unincorporated villages within its borders. Each one of the villages named above has a post office and a post office address alone has been held sufficient to comply with the act: Picture Referendum Blakely Borough, 49 Lack. 105 (1947), Local Option Petitions, 14 Somerset 282 (1949).

In small villages such as we are here concerned with, folks know each other and where they reside and we think the address adequate and a compliance with the act.

The act requires that the address shall state "street and number if any". Some of the addresses have street and number and not one bit of evidence has been produced by the objectors that any signer lived in a numbered house and failed to state that number in his or her address. It must be constantly borne in mind that so far as the addresses are concerned, the signatures are prima facie valid and the burden was on the objectors to prove otherwise.

In reference to the addresses given only as a rural delivery route—this is a post office address and as we have shown, a post office address is sufficient. It is argued that some of the rural free delivery routes here involved, extend into other townships besides Upper Providence and some of the signers may not live in the township. At the head of each petition appears these words: "The undersigned duly qualified electors of the Township of Upper Providence" and each petition is supported by an affidavit in which the affiant swore that the signers "are qualified electors and duly registered in the said Township of Upper Providence . . ."

We are of the opinion that it was the duty of the objectors to show that any signer was not a resident of Upper Providence Township and this they failed to do. . . .

*Illegal Occupation*

As we understand it, the opponents do not contend that the occupations themselves are illegal, but that they do not comply with the act in that they are not occupations at all.

Leonard J. Burke gave his occupation as "factory". It is contended that this is not an occupation. In our opinion this is drawing too fine a sight on the provisions of the act. Mr. Burke may be a factory worker or connected in some way with a factory. The objection to his stated occupation is without merit.

Philip F. Cowan gives his occupation as "antiques". We are of the opinion that this is a substantial compliance with the act.

Dorothy R. Lodge, Anna A. Willard, Anna E. Stiefel and Elizabeth B. Colgate give their occupations as "homemaker" or "at home". We think this is sufficient.

Arthur A. Green gives as his occupation "Taylor Fibre employee". We think this sufficient.

Samuel A. Lewis gives his occupation as "Bell Telephone Co.". We think this sufficient to designate him as an employe of that company.

Ralph E. Sunmore gives his occupation as "dealer". We think this sufficient.

Osborn Levis gives his occupation as "paints, etc.". We think this is sufficient to help identify Mr. Levis.

Vernon C. Readman, Robert J. Wilt, Elizabeth O. Moore and Peter Ostofi list their occupations as "operators". We think this is sufficient to identify them. For instance, the designation "laborer" has always been considered as a proper designation of occupation and "operator" is just as selective as "laborer" or "labor".

Phoebe Gilkyson gives her occupation as "newspaper". We think this is sufficient to identify her as connected with a newspaper.

William H. Schnoval gives his occupation as "factory". We think this sufficient.

Mary Pufko gives her occupation as "V. F. A. H.". This no doubt stands for Valley Forge Army Hospital, but there is no evidence that this is so. We think this designation of occupation is too vague and indefinite.

The occupation of a signer of a petition such as this has no relation to the right of a signer to sign the petition. The requirement that the occupation be stated is inserted in the law as an additional means of identification and considered in that light, we are of the opinion that 16 of the 17 objections to signers as giving "illegal occupations" are without merit. As to Mary Pufko, the objection is sustained.

Two of the signers left the space of occupation blank. While it may be that there is some question as to whether this is a compliance with the act, we have not considered these names.

### Fraudulent Petition

According to the evidence, under this heading is the petition sworn to by H. John Black. The petition is termed fraudulent because it is averred that Mr. Black does not live in Upper Providence Township and the evidence to sustain that averment is that he paid a per capita tax in 1952 in the Borough of Collegeville. Mr. Black testified that he lives very close to the line dividing Collegeville and Upper Providence Township and that he frankly was not sure in which municipality he lived. He is registered as a voter in Upper Providence Township and has voted there in every election since residing in the house in which he now lives.

Even if he lived in the Borough of Collegeville, it does not follow that the 21 names on the petition sworn to by him must be thrown out. We know of no requirement that the person who swears to a petition under the liquor law must reside in the municipality

where the petition is circulated, assuming that Mr. Black circulated the petition.

Against the evidence that he does not live in Upper Providence, he has taken an affidavit that he lives in Upper Providence, he has voted in Upper Providence Township for a number of years and he is a registered elector in that township.

It will take more evidence than the payment of a per capita tax to satisfy us that he does not live in the township.

At the hearing on April 2, 1953, the objectors presented 35 affidavits made by persons who signed the local option petition. These affidavits, nearly all of which were couched in identical language, averred that the affiants had signed the affidavit because the solicitor had misrepresented to them that the local option referendum would not affect the present beer and liquor licenses in the township. The court refused to accept these affidavits into the evidence for two reasons. First, because they were all dated after the local option petition was filed, and second, because they accused the solicitors of fraud and misrepresentation and it would have been unfair to accept these ex parte statements and thus deprive the solicitors of the right of confrontation and cross-examination. We therefore told the objectors that we would continue the hearing to April 10th in order to give those who desired to withdraw their names a chance to appear in court and sustain the charges made in the affidavits. At the continued hearing, but three appeared and they did not testify to any misrepresentation made to them; they simply said they wanted to withdraw their names.

It has been held, and rightly so, that electors may not withdraw their names after the petition is filed, unless the signatures of the would-be withdrawers were obtained by fraud or misrepresentation: Com-

munist Party Nomination Papers, 33 Luz. 265 (1939).

All of the above affidavits were dated after the petition was filed, and there is not a scintilla of evidence of any fraud or misrepresentation on the part of the solicitors.

We have not the time and it would unduly extend this opinion to discuss the objections to each and every name objected to. Suffice it to say, we have considered all the objections and find them without merit, except as hereinbefore set out. We therefore make the following computation:

```
Number of signatures on the petition......................  632
Stricken off because of duplication.....................   10
Not counted because of predating ....................  139
Not registered as a voter ...........................    1
Defective description as to occupation .................    3
Not counted because of afterdated ......................    1
                                                     ———  154
     Valid signatures ....................................  478
     Signatures necessary ...............................  455

     Over the required number .......................   23
```

And now, April 20, 1953, the rule to show cause why the petition for a referendum under the local option provisions of the Liquor Code should not be set aside is discharged and the petition filed in support of the rule is dismissed.