558 A.2d 185

**Max WEINER and Consumer Party of Pennsylvania, Petitioners,**

**v.**

**SECRETARY OF the COMMONWEALTH, Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Heard May 10, 1989.

Decided May 11, 1989.

12

Philip M. Lord, Commons & Lord, Philadelphia, for petitioners.

John O.J. Shellenberger, Deputy Atty. Gen., Chief, Litigation Section, Eastern Regional Office, Office of Atty. Gen., Philadelphia, for respondent.

Richard D. Spiegelman, Chief Deputy Gen. Counsel, Andrew Sislo and Gregory E. Dunlap, Deputy Gen. Counsels, for Morey M. Myers, Gen. Counsel.

## OPINION

CRUMLISH, Jr., President Judge.

The Chancellor, having entered an Order denying the petitioners' application for special relief in the nature of a special injunction, files this Opinion in support thereof.

On May 16, 1989, the electors of this Commonwealth will be asked to approve or reject a constitutional amendment which would authorize the legislature to require or permit local government units to restructure revenue raising measures. The proposed amendment would provide an excep-

tion to the "tax uniformity clause," Article VIII of the Pennsylvania Constitution, as stated:

§ 2. **Exemptions and special provisions.**

. . . .

(b) The General Assembly may, by law:

. . . .

(VI) MAKE SPECIAL TAX PROVISIONS AUTHORIZING OR REQUIRING CLASSES OF LOCAL TAXING AUTHORITIES TO REDUCE TAX RATES ON RESIDENTIAL REAL PROPERTY TO THE EXTENT OF ADDITIONAL REVENUES OBTAINED FROM PERSONAL INCOME TAXES; ALL OTHER CHANGES IN REAL PROPERTY TAX RATES SHALL BE UNIFORM AS PROVIDED IN SECTION 1.

Joint Resolution No. 1, H.B. No. 14.

The official ballot, as certified by the Secretary of the Commonwealth, poses the following question:

SHALL ARTICLE VIII, SECTION 2(B) OF THE PENNSYLVANIA CONSTITUTION BE AMENDED TO ALLOW FOR LEGISLATION WHICH WOULD REQUIRE OR PERMIT LOCAL GOVERNMENT UNITS TO REDUCE RESIDENTIAL REAL ESTATE TAX RATES TO THE EXTENT OF ADDITIONAL REVENUES OBTAINED FROM PERSONAL INCOME TAXES, WHILE KEEPING ALL OTHER CHANGES IN REAL ESTATE TAX RATES UNIFORM?

Max Weiner, a registered voter of the Commonwealth, and the Consumer Party of Pennsylvania (petitioners) filed a petition for review and an application for special relief in this Court's equity jurisdiction, asking this Court to strike from the May 16, 1989 primary ballot this proposed constitutional amendment question asking voters whether to amend the Pennsylvania Constitution to permit what is colloquially designated local tax reform. In addition, petitioners request that this Chancellor order the Secretary of the Commonwealth to rephrase the official ballot question so that it is neither ambiguous nor deliberately misleading.

Before the Chancellor is the application for special relief seeking a special injunction.

In his answer, the Secretary of the Commonwealth denies that the ballot question is ambiguous or in any way misleading and prays that this Chancellor deny the relief sought and dismiss the application.

A hearing was held on May 10, 1989, at which both parties presented testimony. Petitioners offered the testimony of Max Weiner, who testified generally that he commenced this action after having read the ballot question and compared it with the actual amendment to the Constitution. According to Weiner, the ballot question misled voters because, as phrased, it suggested that *all* local government units would receive equal treatment under ancillary enactment legislation known as "The Local Tax Reform Act" or Act 145,[1] when, in fact, the legislation actually differentiates the methods by which the various local governments structure their taxation needs under legislative enactment.

The Secretary called William Boehm, Commissioner, Bureau of Commissions, Elections and Legislation, who testified in detail, delineating the practical problems involved should the Chancellor grant the petitioners' relief at this time in the election process. Commissioner Boehm testified that he did not believe the ballot could or should be changed or the question stricken from the ballot prior to the primary election day.

## RELIEF REQUESTED

By requesting special relief, petitioners in effect seek an affirmative or mandatory preliminary injunction. Thus, they carry an onerous burden.

[F]irst, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly

1. Act of December 13, 1988, P.L. 1121, No. 145, 72 P.S. §§ 4750.101—4750.3112.

restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded.

*New Castle Orthopedic Associates v. Burns*, 481 Pa. 460, 464, 392 A.2d 1383, 1385 (1978) (citations omitted). The failure to prove but one of these prerequisites must result in the denial of injunctive relief. *Leonard v. Thornburgh*, 75 Pa.Commonwealth Ct. 553, 463 A.2d 77 (1983).

Initially, we note that we do not decide the propriety of Act 145 or the constitutional amendment permitting Act 145's implementation. The narrow issue petitioners present is whether the omission from the ballot question of the phrase "classes of" modifying "local government units" is demonstratively deceptive or manifestly misleading to voters when compared with the actual constitutional amendment. Petitioners argue that by failing to include that particular term on the ballot question, the electorate will be misled into believing that *all* local government units receive equal treatment under Act 145, when in fact, divergent "classes of" government units may be permitted *or* required to reduce real estate taxes depending upon the government unit's classification. Thus, petitioners contend, voters in government units not required to reduce real estate taxes might mistakenly believe that their real estate taxes will be decreased and would vote "yes" to the question. It is to this contention that the standard for a preliminary injunction will be applied.

## IRREPARABLE HARM

Petitioners argue first that voters will be irreparably harmed if the official question remains as certified on the ballot, suggesting that the electorate is voting without having a clear understanding of the effect of their votes, in

that they would believe that certain tax benefits would inure in all instances.

In contrast, the Secretary argues that Commissioner Boehm's testimony demonstrated an insurmountable obstacle in deleting the question from the ballot at this late stage on the "eve" of the election. This Chancellor finds Commissioner Boehm's testimony to be not compelling. Regardless of the Commissioner's concern for the difficulties of the task at hand in deleting ballot questions, where executive branch and local government election officials are at issue, the *only* equities which overwhelmingly warrant this Chancellor's concern are the obstacles to the electors' free and deliberative choice. He must be convinced that the voters will have before them a fair and reasonable restatement of the proposed amendment.

Moreover, if the need justifies, a court could subsequently invalidate an election, because it is beyond peradventure that a vote of the people cannot validate and Constitutionalize anything which has the effect of castrating a provision of the Constitution, and this question or issue of Constitutionality is justiciable even after the voters have adopted such a provision. *Stander v. Kelley*, 433 Pa. 406, 250 A.2d 474 (1969). Therefore, the sense of grave urgency advanced by the petitioners does not impress this Chancellor and, accordingly, a finding of irreparable harm cannot be made.

## LIKELIHOOD OF SUCCESS ON THE MERITS

In order to obtain the relief they seek, petitioners must *also* demonstrate that their right to relief is clear. That is, they must show that they would likely succeed on the merits of their position. This Chancellor concludes that petitioners have not demonstrated that the ballot question is misleading or ambiguous when read in conjunction with the actual amendment.

He is guided by analogous case law. In *Stander v. Kelley*, taxpayers of this Commonwealth sought to enjoin

the April 23, 1968 primary election results adopting several amendments to this state's Constitution. Included among those sweeping changes was a revision of Article V of the Constitution authorizing a unified judicial system within the Commonwealth. A challenge was brought to the form of the notice of the constitutional amendment as it appeared on the ballot. Chief Justice Bell wrote:

It is obvious that this question as printed on the ballots is but a tiny and minuscular statement of the very lengthy provisions of the proposed Judiciary Article V. It is equally clear and realistic beyond the peradventure of a doubt that a lengthy summary of the proposed [amendment] could not have been printed on an election ballot. The first and most important question *on this point* is: Does the question as stated on the ballot fairly, accurately and clearly apprize the voter of the question or issue to be voted on?

433 Pa. at 417–18, 250 A.2d at 480 (emphasis in original).

Similarly, one of Pennsylvania's most distinguished jurists, Chief Justice Horace Stern, noted in *Oncken v. Ewing,* 336 Pa. 43, 47–48, 8 A.2d 402, 403–04 (1939):

The invalidation of a public election is a judicial act of serious import, and is justified only by circumstances of the most compelling nature. . . . [Or if] the form of the ballot is so lacking in conformity with the law and so confusing that the voters cannot intelligently express their intentions; in such instances it may be proper and necessary for a court to nullify an election. But where the irregularity complained of could not reasonably have misled the voters and did not result in the question at issue being presented to them unintelligibly, the election cannot be judicially overturned because of some innocuous deviation from a statutory requirement which might have been previously rectified through resort to the remedy given by the law for that purpose. . . . If the law itself declares a specified irregularity to be fatal, the courts will follow that command, irrespective of their view of the importance of the requirement. In the ab-

sence of such declaration, the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed forms of law had, or had not, so vital an influence on the proceedings as probably prevented a free and full expression of the popular will. If it had, the irregularity is held to vitiate the entire return; otherwise it is considered immaterial.... It does not ... follow that every slight departure [from the provisions of the election laws] should taint the whole proceedings with a fatal blemish. Courts justly consider the chief purpose of such laws, namely, the obtaining of a fair election and an honest return, as paramount in importance to the minor requirements which prescribe the formal steps to reach that end; and, in order not to defeat the main design, are frequently led to ignore such innocent irregularities of election officers as are free of fraud and have not interfered with a full and fair expression of the voters' choice.

(Citations omitted.)

Under these strictures, this Chancellor has determined that the question presented to the voters fairly and adequately represents the sense and meaning of the amendment. It must not be mistaken, and bears repeating, that the electorate is not asked to vote on legislation which would enact tax changes. The question presented here merely authorizes the legislature, in its wisdom, to open a window of opportunity enabling local municipalities to raise revenues in methods previously unavailable under the unamended Constitution. Regardless of the tax effects of the actual legislation, petitioners have failed to prove their postulation that voters would be misled merely by the omission of the phrase "classes of." Aside from Weiner's personal observations that he believed Philadelphians would be misled into thinking that a reduction in residential real estate taxes would be required, petitioners presented no evidence suggesting that the voters of the Commonwealth would be lulled into ratifying the amendment under the mistaken belief that their taxes would automatically be reduced. This Chancellor must, and does with justification,

presume that the electorate is literate and informed and will read and understand the certified question. When so read, voters are apprised that they are being asked: (1) whether the Constitution shall be amended; (2) to allow the legislature to enact a law; (3) either *requiring or permitting;* (4) local governments; (5) to reduce real estate taxes in an amount proportional to additional taxes on personal income; (6) while keeping other real estate tax rate changes uniform.

In reviewing the question, this Chancellor finds the inclusion of the phrase "require or permit" notifies the voters that one government unit could be *directed* to reduce taxes while another could *choose* to reduce taxes. By juxtaposing mandatory and discretionary verbs, the voter is alerted that his or her tax consequences could differ from a resident of another government unit. Simply put, a voter reading the question would realize that some government units *could* reduce taxes while other government units *must* reduce taxes.

Mindful of Chief Justice Bell's direction in *Stander v. Kelley,* this Chancellor concludes that despite the complicated nature of the task facing the electorate in ratifying or rejecting the referendum, the inclusion of "classes" would serve no clarifying purpose. In fact, this Chancellor is impressed that its inclusion might actually confuse voters, because a voter reading the question could incorrectly assume that the *amendment* would apply only to certain classes of local government units instead of properly applying to all government units.

As a result, petitioners have demonstrated no clear right to relief. Having concluded that petitioners have failed to show that they will be irreparably harmed or that they would likely succeed on the merits, a balance of the equities is superfluous. *Committee of Seventy v. Albert,* 33 Pa. Commonwealth Ct. 44, 381 A.2d 188 (1977).

This Chancellor is confident that the voters, armed with the official question, the Attorney General's plain english statement prepared and disseminated for publication and

posting at the polls, and the abilities of reason and common sense, are sufficiently notified of the effect of the constitutional amendment put before them. Accordingly, petitioners' application for special relief is denied.